IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Derek Clements, et al., | ) | Civil Action Number: 2:22-cv-02069-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Lloyd J. Austin, III, Secretary of Defense, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO SEVER

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, Defendants move this Court to sever the claims of each individual Plaintiff and, concurrently, to dismiss the claims of the twenty (out of twenty-four) Plaintiffs who have no connection to the District of South Carolina.

In this case, each Plaintiff presses a distinct set of claims arising from their unique status, assignment, duties, and circumstances, and resolving those claims will require the Court to conduct an individualized assessment of each Plaintiff's administrative record and facts unique to each Plaintiff. As a threshold matter, the Court will need to consider the history of each Plaintiff's claims to determine whether those claims are ripe and exhausted. On the merits, Plaintiffs' Religious Freedom Restoration Act (RFRA) claims will require distinct inquiries as to each service member's religious beliefs, the government's compelling interest in vaccinating that service member according to his/her duties and assignment, and the availability of less restrictive means of furthering the government's compelling interest in light of the service member's particular duties and workplace context. Moreover, any appropriate relief, if granted, would differ from Plaintiff to Plaintiff, and would run only against certain of the Defendants, depending upon the Plaintiff's particular affiliations with the military Services. This Court will be required to resolve

1

these individualized, fact-intensive claims of twenty Plaintiffs with no meaningful contacts with the District of South Carolina.

The fact-specific analysis of each Plaintiff's claims, and the requirement that any relief also be tailored to each Plaintiff, undermines any efficiency gained from joinder, and counsels in favor of severance. The individualized claims of the properly venued Plaintiffs are best litigated separately, and the claims of Plaintiffs with no connection to South Carolina should be litigated in districts where venue is proper and other considerations appropriate under Rule 21 would be served.

**I.     Background**

   **A.     The Department of Defense Immunization Requirements**

"The COVID vaccination mandate should be understood against the backdrop of other military immunization mandates—which date back as far as General George Washington's mandate that troops in the Continental Army be inoculated against smallpox." *Oklahoma v. Biden*, No. 21-cv-1136-F, 2021 WL 6126230, at *8 (W.D. Okla. Dec. 28, 2021). DoD's current immunization program is governed by DoDI 6205.02.[1] Nine vaccines are required for all service members, including the annual influenza vaccine, while eight others are required when certain elevated risk factors are present, such as deployment to certain parts of the world. *See* BUMEDINST 62.30.15B.[2] In general, DoD aligns its immunization requirements for service members with recommendations from the CDC's Advisory Committee on Immunization Practices. *See* DoDI 6205.02 at 3.

On August 24, 2021, the day after the U.S. Food and Drug Administration (FDA) granted

---

[1] *See* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/620502p.pdf?ver=2019-07-23-085404-617
[2] *See* https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r40_562.pdf

approval to the first COVID-19 vaccine, the Secretary of Defense announced that vaccination against COVID-19 would be added to the list of required immunizations.[3] The Secretary explained that, "[a]fter careful consultation with medical experts and military leadership," he had concluded that "mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people."[4]

### B.     This Case

Plaintiffs are fifteen cadets from three different service academies—the U.S. Air Force Academy (USAFA), the U.S. Military Academy (USMA), and the U.S. Coast Guard Academy (USCGA)—and nine active duty and reserve personnel of the Air Force.  *See* Compl., ECF No. 1, ¶¶ 1-24.  Only four of the Plaintiffs (Derek Clements, Cade Kloster, Zach Pokrant, and James Vasiliu) are stationed in South Carolina.  *See* Compl., ECF No. 1, ¶¶ 1-4.

Asserting disparate theories, Plaintiffs challenge the August 24, 2021 directive by the Secretary of Defense "that all service members and cadets be fully vaccinated [against COVID-19] with a licensed vaccine," *see* Compl., ECF No. 1, ¶ 28 (internal quotation marks omitted), both on its face and as implemented by the Secretary of the Air Force, the Secretary of the Army, the Commandant of the Coast Guard, the Superintendent of the USAFA, the Superintendent of the USMA, and the Superintendent of the USCGA.  Compl., ECF No. 1, ¶¶ 29-34.  Seventeen Plaintiffs assert that the COVID-19 vaccination directive, as implemented by the various Services, burdens their exercise of religious beliefs in violation of RFRA and the Free Exercise Clause of

---

[3] Sec'y of Def., Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members (Aug. 24, 2021), https://media.defense.gov/2021/Aug/25/2002838826/-1/-1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF (last visited June 7, 2022).
[4] *Id.*

3

the First Amendment.  *See* Compl., ECF No. 1, ¶¶ 77-85.  Nineteen Plaintiffs claim that the COVID-19 vaccination directive conflicts with a military regulation (Army Regulation 40-562) concerning preexisting immunity, and is therefore arbitrary and capricious and contrary to law under the Administrative Procedure Act (APA).  *See* Compl., ECF No. 1, ¶¶ 99-107.  All Plaintiffs assert that the COVID-19 vaccination directive violates the APA because it is inconsistent with 10 U.S.C. § 1107a and Department of Defense Directive (DoDI) 6200.0, which each concern informed consent for vaccination, and with the Fifth Amendment's guarantee of procedural due process.  *See* Compl., ECF No. 1 ¶¶ 86-98, 108-118.[5]

## II.     Legal Standard

Rule 21 of the Federal Rules of Civil Procedure provides that the court "may . . . sever any claim against a party."  Fed. R. Civ. P. 21.  "In general, questions of severance are addressed to the broad discretion of the district court."  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed. 2020); *see also Weaver v. Marcus*, 165 F.2d 862, 864 (4th Cir. 1948) (Rule 21 ruling by district court can be reversed on appeal only where there has been a clear abuse of discretion).  Commonly, Rule 21 is invoked to sever parties that are improperly joined under Rule 20, or where venue is improper as to some but not all defendants.  *See* Wright & Miller, *Federal Practice and Procedure* § 1689.  However, even where the parties are appropriately joined and venue is proper, a court may still sever any claim and proceed with it separately or transfer it to a more convenient forum.  *Id.*; *see also Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div.*, 204 F. Supp. 139 (W.D.S.C. 1962) ("Even where the venue is proper as

---

[5] All Plaintiffs purport to bring a cause of action under the Fifth Amendment for alleged disregard of AR 40-562, even though only nineteen of the twenty-four Plaintiffs purport to bring a cause of action under the APA for alleged disregard of AR 40-562. *Compare* Compl., ECF No. 1, ¶¶ 99-107 *with id.* ¶¶ 108-118.

4

to all of the joined claims, and the forum is a convenient one for some, but not all, of the claims, the court might properly sever and transfer certain of the claims to a proper and more convenient forum." (citing *Moore's Federal Practice*, Vol. 3, pp. 2910, 2911)).

While Rule 21 is silent on the standard for deciding motions to sever, district courts consider:

> 1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*Grayson Consulting, Inc. v. Cathcart*, No. 2:07-cv-2992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2019) (citing *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)); *see also Goss v. Stirling*, No. 2:18-cv-2124-BHH-MGB, 2018 WL 7254606, at *3 (D.S.C. Nov. 20, 2018); *Todd v. Cary's Lake Homeowners Ass'n*, 315 F.R.D. 453, 459 (D.S.C. 2016). "[D]istrict courts also consider 'fundamental fairness, judicial economy, prejudice, undue delay, as well as the dual threat of duplicitous litigation and inconsistent verdicts.'" *Tinsley v. Streich*, 143 F. Supp. 3d 450, 462 (W.D. Va. 2015). "Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claims that are properly before it." Matthew Bender, *Moore's Federal Practice* § 21.05 (3d ed. 2011).

### III. Discussion

Each of the twenty-four Plaintiffs assert different sets of claims against different defendants for different conduct.[6] The alleged causes of action will require the Court to make individualized

---

[6] As discussed above, only seventeen of the Plaintiffs bring RFRA and First Amendment claims, and nineteen bring APA claims alleging a violation of AR 40-562, which addresses medical exemptions from inoculation based on preexisting immunity.

5

determinations for each Plaintiff based on separate circumstances and administrative records. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1032 (4th Cir. 1983) (holding that where "cars were purchased at different times, were driven differently, and had different service histories" the district court did not abuse its discretion "in determining that the allegedly similar [automotive] problems did not satisfy the transaction or occurrence test"). The RFRA claims in particular require the Court to make an individualized, factual assessment of each Plaintiff's sincere religious belief, the burden of the governmental action on the Plaintiff's sincere religious beliefs, the government's compelling interest in vaccinating each Plaintiff, and the availability of less restrictive means of furthering the government's compelling interest. *Holt*, 574 U.S. at 363. This highly factual inquiry requires consideration of each individual Plaintiff's beliefs, job duties, and workplace and/or academic context. Additionally, each Plaintiff's claims entail a separate analysis regarding ripeness and exhaustion. The need for such individualized determinations of Plaintiffs' claims weighs against joint consideration of the claims. *See Chisolm v. S.C. Dep't of Corr.*, No. 6:18-cv-1150-RMG-KFM, 2019 WL 456262, at *8, *report and recommendation adopted*, 2019 WL 459020 (D.S.C. Feb. 5, 2019) (finding that consolidation of parties and claims based on allegations of separate actions committed at different times and involving different individuals would result in protracted discovery and confusion of the issues, which would be prejudicial to the parties and would not promote judicial efficiency). Those burdens attendant to the individualized assessment of the claims and relief, if any, are particularly weighty for the twenty Plaintiffs with no contact with the District of South Carolina.

Merely bringing the same cause of action does not establish that the claims arise out of "the same transaction [or] occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a); *see Battle v. S.C. Dep't of Corr.*, No. 2:18-cv-576-TMC-MGB, 2019 WL 7900157, at *4-5, *report*

*and recommendation adopted*, 2019 WL 6999931 (D.S.C. Dec. 20, 2019) (finding that, where plaintiffs sought relief for separate and distinct incidents involving different defendants at different times, even though the causes of action were the same, the claims did not arise out of the same transaction or occurrence).  Here, seventeen Plaintiffs challenge the COVID-19 vaccination mandate and implementation with a RFRA claim.  Compl., ECF No. 1, ¶¶ 77-85.  Each of these seventeen Plaintiffs must independently demonstrate (1) a substantial burden on (2) a sincerely held religious belief.  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690 (2014).  For each Plaintiff who makes these showings, under RFRA, the burden shifts to the relevant Defendant to "demonstrat[e] that the application of the burden to the person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(b)).  Each of these issues must be separately analyzed with respect to each Plaintiff asserting a RFRA claim.

Because each Plaintiff performs a different function in the military, the military considers their particular circumstances in determining whether the government's compelling interest requires that each Plaintiff be vaccinated against COVID-19 and whether lesser restrictive means exist for furthering that compelling interest.  For example, the Air Force assesses the need for a pilot to be vaccinated in light of the requirements of that particular job, while the Army and Coast Guard do the same for different occupations (such as an Army Ranger, an Air Force training instructor, or a Coast Guard pilot), as do the academies for their cadets.  Each Service has been conducting individualized assessments regarding whether vaccination is the least restrictive means to accomplishing its mission.  *See Gregory v. FedEx Ground Package Sys., Inc.*, No. 2:10-cv-630, 2012 WL 2396873, at *10-11 (E.D. Va. May 9, 2012), *report and recommendation adopted*, 2012

WL 2396861 (E.D. Va. June 25, 2012) (severing claims because "the fact-finder [must] examine the way in which FedEx managers treated ten different employees at four different terminals before reaching the question of whether any of [the defendant's] conduct was wrongful").

The Court would therefore review an individualized assessment of each Plaintiff's RFRA claim based on the record compiled by the relevant Service at the time of its eventual decision for each applicant. Even assuming each Plaintiff's religious accommodation request is finally denied (which may not occur), adjudicating these claims together in one case would require judicial review of a separate administrative record for each finally denied religious accommodation request, in addition to the administrative record for the challenged DoD directive itself. That could mean that Defendants will need to file, and this Court will need to review, as many as seventeen administrative records. In these circumstances, courts have found that severance is appropriate. *See, e.g.*, *Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-cv-480, 2009 WL 3857417, at *8 (E.D. Cal. Nov. 19, 2009) ("Each separate agency action will have a separate administrative record. Although there may be some overlap if similar information . . . was before each agency at the time of its decision . . . , each record will include extensive, unique, unrelated information about the different agency action in question."). Accordingly, because each religious exemption request is considered on an individualized basis, any final denials are separate "transactions or occurrences" under Rule 20 such that joinder of Plaintiffs' claims is not appropriate or even efficient.

Considerations of judicial economy, case management, prejudice to parties, and fundamental fairness counsel in favor of severance of Plaintiffs' claims and concurrent dismissal of the improperly venued claims. As described above, the fact-specific nature of the claims and defenses that have been, or will be, raised by the parties undermines any suggestion that judicial

8

economy would be served by joinder. Each Plaintiff's claims will have different issues, different witnesses, and different documentary proof. Given that only four of the twenty-four Plaintiffs are stationed in South Carolina, the vast majority of the witnesses and documentary proof lies in districts other than South Carolina. Resolving all of the claims in one action will likely result in delay and greater costs to the parties, which ultimately will prejudice both Plaintiffs and Defendants.

Indeed, "[a]llowing this case to proceed as filed would violate the principles of judicial resource allocation embodied in the separate docketing and random assignment protocols which are employed by federal courts to ensure equitable distribution of judicial workloads and efficient, timely, and impartial resolution of cases." *Ahmed v. Miller*, 452 F. Supp. 3d 721, 727 (E.D. Mich. 2020). Here, only four of the twenty-four Plaintiffs allege that they have any connection to South Carolina. Compl., ECF No. 1, ¶¶ 1-4. Five Plaintiffs who are cadets at the Coast Guard Academy—none of whom appear to have any connection with South Carolina, or even the Fourth Circuit—have filed a motion for temporary restraining order. Pls.' PI Motion, ECF No. 4. All Plaintiffs seek a preliminary injunction enjoining Defendants from taking any adverse action against Plaintiffs for refusing the vaccine due to a sincerely held religious belief or for having what they describe as prior immunity. Pls.' PI Motion, ECF No. 4, at 2. Aside from the burdens this would impose on the Court, the resolution of the motion for temporary restraining orders addressed to each of the cadets' cases and preliminary injunctions for each Plaintiff's case, along with judicial review of seventeen different individualized administrative records concerning religious accommodation requests by service members throughout the country with no connection to this forum, is unnecessary. Judicial review should be divided among courts in forums that have a closer relationship to the parties. Severing Plaintiffs' claims and requiring them each to proceed

in a district where venue is proper will not prejudice those Plaintiffs because each will be able to pursue his/her claims in a proper venue.

Finally, severance of all claims and dismissal of the improperly venued Plaintiffs would be consistent with proceedings in other COVID-19 vaccine challenges. In *Crosby v. Austin*, fifteen service members from five different military services challenged the DoD COVID-19 vaccination directive. Ex. 1, Order, *Crosby v. Austin*, No. 8:21-cv-02730 (M.D. Fla. Feb. 22, 2022), ECF No. 44. All but one of the plaintiffs asserted objections to the vaccine requirement based on religion. *Id.* at 1–2. As in this case, the *Crosby* plaintiffs brought both facial and as-applied First Amendment and RFRA challenges to the DoD COVID-19 vaccination directive and a claim that the DoD directive violates the FDCA and 10 U.S.C. § 1107a. *See* Compl., *Crosby v. Austin*, 8:21-cv-02730 (M.D. Fla. Nov. 19, 2021), ECF No. 1 ¶¶ 111–17, 159–73, Prayer For Relief ¶¶ C, D, F. Similar to this case, "[o]nly one of the Plaintiffs ha[d] anything to do with the Middle District of Florida." Order, *Crosby*, No. 8:21-cv-02730, ECF No. 44 at 2. The *Crosby* court found that "even if the fifteen Plaintiffs here satisfy the two-prong test for joinder, the differences between their claims are too numerous to promote judicial economy." *Id.* at 3. The court further found that "it is clear that resolution of many of these claims – such as the religious claims – would require a separate analysis and involve different proof and different witnesses, located in various places across the country." *Id.* The court concluded that severance "is necessary to promote judicial economy" and severed and dismissed without prejudice the claims of all plaintiffs except for the sole plaintiff with a connection to the Middle District of Florida. *Id.* The Court should follow a similar course in this case. *See also Bongiovanni v. Austin*, No. 3:22-cv-237-MMH-MCR, 2022 WL 1642158 (M.D. Fl. May 24, 2022) (severing eighteen plaintiffs from the armed forces challenges to the COVID vaccine according to the different branches of the military); *see*

10

*also* Ex. 2, *Colonel v. Austin*, No. 8:22-cv-1277-SDM-TGW (M.D. Fla.) (dismissing challenge to military COVID-19 vaccination mandate for lack of venue because parties did not reside in district); Ex. 3, *National Guardsman v. Austin*, No. 8:22-cv-1279-SDM-TGW (M.D. Fla.) (same); Ex. 4, *Pilot v. Austin*, No. 8:22-cv-1278-SDM-TGW (M.D. Fla.) (same).

## CONCLUSION

For the reasons stated, Defendants respectfully request that the Court sever all of the individual Plaintiffs' claims, and dismiss without prejudice the claims of the twenty Plaintiffs with no apparent connection to South Carolina, so that they may file lawsuits in an appropriate venue.

Dated: July 15, 2022

Respectfully submitted,

COREY F. ELLIS
UNITED STATES ATTORNEY

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

By: *s/Beth Drake*
Beth Drake (#5598)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC   29201
Phone:  (803) 929-3061
Email:   Beth.Drake@usdoj.gov

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

CODY KNAPP (NY #5715438)
CASSANDRA M. SNYDER (DC #1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

11