IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Derek Clements, *et al.*, | ) | Civil Action Number:   2:22-cv-02069-DCN |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Lloyd J. Austin, III, Secretary of Defense, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendants respectfully inform this Court of their position regarding Plaintiffs' third "Motion for a Temporary Restraining Order," filed on August 16, 2022. *See* ECF No. 35 ("Pls.' Third TRO Mot.").[1]  In brief, that motion should be denied because Plaintiffs have not satisfied any of the requirements to obtain a temporary restraining order, and because this latest motion is procedurally improper.

"The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same." *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 465 (D.S.C. 2020). This means that, in order to obtain a temporary restraining order, Plaintiffs must "make a 'clear showing' that (1) [they are] likely to succeed on the merits; (2) [they are] likely to suffer irreparable harm in the absence of preliminary relief;

---

[1] So that Defendants can provide the Court with their position as soon as possible, they have limited this response brief to addressing only the issues raised in Plaintiffs' third TRO motion, filed on August 16.  Defendants intend to file a separate response to Plaintiffs' second motion for a temporary restraining order and preliminary injunction, ECF No. 34 ("Pls.' Second Mot. for TRO and Prelim. Inj."), on or by August 24, 2022.

1

(3) the balance of equities tips in [their] favor; and (4) an injunction is in the public interest." *Collins v. Belzer*, No. 2:20-cv-3752-RMG, 2021 WL 4520175, at *1 (D.S.C. Oct. 4, 2021). Each factor must be considered and satisfied separately, *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017), and even a strong showing as to some factors "cannot compensate for failure to show" another, *S.C. Progressive Network Educ. Fund*, 493 F. Supp. 3d at 465. And importantly, "[t]he burden is on the party seeking injunctive relief to show it is entitled to the relief, not the burden of the other party to show the movant is not entitled." *Id.*

On the first factor, Plaintiffs' third TRO motion makes *no argument whatsoever* regarding likelihood of success on the merits of Plaintiffs' claims, nor does the motion acknowledge any obligation to make such a showing. Instead, Plaintiffs attempt to litigate the terms of a past agreement among the parties, claiming that the Coast Guard has failed to honor a purported agreement "to not take adverse administrative action against Plaintiffs until September 1, 2022." Pls.' Third TRO Mot., ECF No. 35, at 1. Arguments about this collateral issue do nothing to satisfy Plaintiffs' burden to show a likelihood of success on the merits of the claims raised in their amended complaint; for that reason alone, Plaintiffs' motion should be denied. But even setting that issue aside, Plaintiffs' contentions about breach are meritless.

As explained in the parties' Joint Motion for an Extension of Time ("Joint Mot. to Extend"), ECF No. 12, in order to permit a reasonable time for the parties and the Court to consider Plaintiffs' original motion for a temporary restraining order and preliminary injunction, *see* ECF No. 4, the parties reached a limited agreement on deferring disciplinary action against, among others, the five Plaintiffs enrolled as cadets at the Coast Guard Academy. As relevant to this motion, the parties' agreement ran, by its terms, between "Defendant Superintendent of the U.S. Coast Guard Academy" and "the named Plaintiffs who are cadets at th[at] Academ[y]," namely,

Sophia Galdamez, Nathan Aime, Tabitha Aime, Dayna Johnson, and Jin Johnson. Joint Mot. to Extend, ECF No. 12, at 2. The agreement "defer[red] any further adverse administrative or disciplinary action against [those] named Plaintiffs . . . based on their unvaccinated status," but only for a limited time: until "the Court resolves the Motion or September 1, 2022, whichever is earlier." *Id.* And the agreement expressly excluded any "pause on travel or assignment or duty decisions or a delay in adjudication of pending accommodation requests." *Id.*

Officials at the Coast Guard Academy have complied fully with the parties' agreement. From the time that the parties informed the Court of their agreement through July 27, no Academy officer took disciplinary action against the cadets based on their vaccination status. But on July 27, the Court granted Defendants' motion to sever the Plaintiffs' claims and dismiss those without any apparent connection to the District of South Carolina. *See Clements v. Austin*, --- F. Supp. 3d ----, 2022 WL 3224604 (D.S.C. July 27, 2022). As part of that order, the claims of all five Coast Guard cadets were dismissed without prejudice to their refiling in an appropriate venue. *See id.* at *3. Contrary to Plaintiffs' apparent understanding, the Court's order of "Dismissal[] and Severance" did not merely "alter[] th[e] timeline," Pls.' Third TRO Mot., ECF No. 35, at 2, for the Court to address the Coast Guard cadets' original TRO motion; rather, it *resolved* their motion with respect to the Coast Guard cadets. The practical effect of the Court's July 27 order was to terminate the Coast Guard cadets as named Plaintiffs in this litigation, and so as of July 27, they no longer had any pending claim or motion for judicial relief. And though Plaintiffs now insist that Defendants agreed "not take adverse administrative action against Plaintiffs until September 1, 2022," Pls.' Third TRO Mot., ECF No. 35, at 1, that understanding is inconsistent with the express terms of the agreement as memorialized in the parties' Joint Motion for an Extension of Time, and at no time have Defendants endorsed Plaintiffs' new selective reading

3

before this Court. Rather, consistent with the parties' agreement to do so only "through the time that the Court resolve[d] the[ir] Motion or September 1, 2022, *whichever is earlier*," Joint Mot. To Extend, ECF No. 12, at 2, the Superintendent of the U.S. Coast Guard Academy was no longer under any obligation, voluntary or otherwise, to defer discipline of the Coast Guard cadets following the Court's order dismissing them from this case. Thus, Plaintiffs are wrong to claim that there has been any breach of the parties' prior agreement on deferring discipline.[2]

This conclusion is only reinforced by a review of the subsequent proceedings in this case. Though Plaintiffs sought to resurrect their claims by way of a motion for reconsideration, *see* ECF No. 28, this Court denied that motion and confirmed that its decision regarding severance and dismissal remained in effect. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3224667 (D.S.C. Aug. 9, 2022). And though Plaintiffs obtained leave of the Court to file a proposed amended complaint on August 9, *see id.* at *1, they did not again renew any claim for judicial relief on behalf of the Coast Guard cadets until the evening of August 15, *see* Am. Compl., ECF No. 33; Pls.' Second Mot. for TRO & PI, ECF No. 34. Thus, at the time that Commander Casavant took the actions of which Plaintiffs complain, the Coast Guard cadets still had made no claim for judicial relief.

Even now that the Coast Guard cadets have re-filed their respective claims, their complaints about compliance with the parties' past agreement are unjustified. Notably, the

---

[2] What is more, the actions that the Coast Guard cadets now seek to restrain—namely, their being placed on "a temporary duty assignment at their home" and being ordered to "complete an administrative out-processing checklist" before departing the Coast Guard Academy campus, Ex. 1, Decl. of Commander Aaron J. Casavant ¶¶ 4–5—are the sorts of "assignment or duty decisions" excluded from the parties' prior agreement, Joint Mot. to Extend, ECF No. 12, at 2. That exclusion logically includes orders to attend (or not attend) classes, to work (or not work) from a particular location, and to undergo physical examinations and take other steps contemplated by the cadets' out-processing paperwork. *See* Ex. 2, Coast Guard Academy Out-Processing Checklist.

amended complaint does not name the Superintendent of the U.S. Coast Guard Academy as a Defendant, even though it was the Superintendent who previously agreed to defer disciplinary action.[3] Even setting that formality aside, it remains the case that the mere filing of Plaintiffs' amended complaint moots their first motion for a temporary restraining order and preliminary injunction, along with any agreement with respect to that motion. *See, e.g.*, *Garcia v. Mid-Atl. Mil. Fam. Communities LLC*, No. 2:20CV308, 2021 WL 1429474, at *3 (E.D. Va. Mar. 4, 2021) (dismissing as moot plaintiff's motion for preliminary injunction after plaintiff filed amended complaint because "an amended complaint supersedes a prior complaint and renders it of no legal effect" (citing *Young v. City of Mt. Rainier*, 238 F.3d 567, 572 (4th Cir. 2001))). And in any event, Plaintiffs' allegations about breach provide no basis for entry of a temporary restraining order now.

Plaintiffs also fail to establish that the Coast Guard cadets face any irreparable harm. Because the moving party bears the burden of "mak[ing] a 'clear showing'" of each of the three preliminarily injunction factors, Plaintiffs' failure to establish irreparable harm is conclusive. *See Collins*, 2021 WL 4520175, at *1. In particular, the "out-processing" and separation procedures that Plaintiffs are currently undergoing do not constitute irreparable harm. In general, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Thus, a mere "delay in completing courses" due to disenrollment "from [a military academy] does not necessarily constitute irreparable harm," and

---

[3] The amended complaint does, however, name new Plaintiffs and a Defendant that were not proposed for inclusion when the Court granted leave for Plaintiffs to file their proposed amended complaint. *Compare* Proposed Am. Compl., ECF No. 28-2, ¶¶ 1–24, 27 *with* Am. Compl., ECF No. 33, ¶¶ 1–29, 32–33.

5

Plaintiffs make no attempt to argue to the contrary. *Spadone v. McHugh*, 842 F. Supp. 2d 295, 302 (D.D.C. 2012) (holding former cadet disenrolled from United States Military Academy failed to show that he would suffer irreparable harm if he was not reenrolled); *see also Martin v. Stone,* 759 F. Supp. 19, 21 (D.D.C. 1991) (stating that "the fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation" did not constitute irreparable harm); *Hamblet v. Brownlee,* 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004) (holding that the possible damage to USMA cadet's reputation and career caused by a nine-month suspension did not constitute irreparable injury); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (inability to continue as medical student without interruption is not a harm that is irreparable to potential medical career). If Plaintiffs ultimately prevail on the merits of their claims, they may reenroll at the Coast Guard Academy without suffering any irreparable harm in the meantime.[4]

And even assuming—incorrectly—that separation would be irreparable, the Coast Guard cadets face no imminent separation that might justify a temporary restraining order. When contacted by Plaintiffs' counsel about the status of the Coast Guard cadets, Defendants offered not to finally separate the cadets until at least September 1, 2022, so that the Court would have adequate time to consider Plaintiffs' second motion for temporary restraining order and preliminary injunction. *See* Pls.' Third TRO Mot., ECF No. 35 at 2 (confirming this offer). Accordingly, no temporary restraining order is needed to prevent separation before Plaintiffs'

---

[4] Of course, the Coast Guard cadets also may prevent any eventual separation by becoming vaccinated. Plaintiffs' claims in the amended complaint turn on the purported requirement "to receive an unapproved and unlicensed SARS-CoV-2 ("COVID-19") vaccine." Am. Compl., ECF No. 33, at 2. But the Coast Guard cadets now have been offered the FDA approved COMIRNATY-labelled vaccine, both at the Coast Guard Academy, *see* Ex. 1, Casavant Decl. ¶ 3, and through an offer communicated by Defendants' counsel on the morning of August 18.

second motion for a temporary restraining order and preliminary injunction can be considered by this Court. And continuing to out-process the Coast Guard cadets—a process that includes "the return of uniform items, a final room inspection, an exit physical exam in the clinic, and arrangements for their transportation home," *see* Ex. 1, Decl. of Commander Aaron J. Casavant ¶ 4—is not akin to separation, nor does it constitute "adverse action" requiring intervention by this Court, *see* Pls.' Third TRO Mot., ECF No. 35, at 2; *see also* Ex. 1, Casavant Decl. ¶ 4 (explaining that out-processing is "non-punitive in nature" and is required of "[a]ll cadets voluntarily resigning or involuntarily disenrolling" from the Coast Guard Academy).

Plaintiffs similarly fail to establish that the equities support granting their requested relief. The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs do not address harm to the government or the public interest, which alone warrants denial of his motion. *See S.C. Progressive Network Educ. Fund*, 493 F. Supp. 3d at 465. In any event, a temporary restraining order allowing Plaintiffs to remain at the Coast Guard Academy unvaccinated would impose immediate and irreparable harm upon the Coast Guard. Plaintiffs' unvaccinated status threatens harm to themselves, other cadets, and faculty and staff at the Coast Guard Academy. Plaintiffs currently live in constant close contact with other cadets. *See* Declaration of Rear Admiral William Kelly, ECF No. 20-25 ¶¶ 3–4; *see, e.g.*, *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 134 (E.D.N.Y. Dec. 6, 2021) (noting the city's "significant interest" in preventing the spread of COVID-19 among firefighters who work in "close proximity" with each other "while on duty, [and] in their fire stations"). Moreover, it is in the public interest that the Coast Guard Academy remain able to control where and how to assign cadets, including

whether to disenroll and separate cadets. Coast Guard cadets graduate into Coast Guard officers, and the national defense depends on service members' compliance with lawfully issued orders. *See, e.g.*, *United States. v. Hardy*, 46 M.J. 67, 74 (C.A.A.F. 1997) ("[The notion] that service members need not obey unpopular, but lawful, orders from either their civilian or military superiors . . . would be antithetical both to the fundamental principle of civilian control of the armed forces in a democratic society and to the discipline that is essential to the successful conduct of military operations.").

Finally, even apart from Plaintiffs' failure to satisfy the standards for obtaining a temporary restraining order, the Court should deny Plaintiffs' latest motion because it is duplicative. Less than 24 hours before filing the August 16 third TRO motion, Plaintiffs had filed their second motion for a temporary restraining order and preliminary injunction. *See* ECF No. 34. That motion complained, among other things, that "all United States Coast Guard Academy ("USCGA") cadets have been ordered disenrolled from the Academy," and for relief, it asked this Court to "order . . . Coast Guard to refrain from treating these cadets any differently than their unvaccinated counterparts until this injunction is resolved." Pls.' Second Mot. for TRO & PI, ECF No. 34, at 1–2. Although Plaintiffs claim that their third motion "account[s] for the events that have occurred within the last 24-hours," Pls' Third TRO Mot., ECF No. 35, at 1, at bottom, it complains of harms (orders of disenrollment and out-processing) that arose before their second motion was filed, and seeks relief (an order "to refrain from taking any further adverse action while the Motion for Preliminary Injunction is pending," *id*. at 3) that was already addressed in that second motion. "Filing a second motion requesting the same relief as a previous, still pending motion only serves to further clog the Court's docket, slow the judicial process, and . . . create confusion for the Court" and parties. *Greene v. Lassiter*, No. 1:19-cv-224-MR, 2020 WL

8

3270390, at *1 n.1 (W.D.N.C. June 17, 2020). And in the context of this case, where the Court has moved expeditiously to address the parties' claims and arguments, such redundancy is particularly unwarranted. For that reason, and in the interest of conserving judicial resources and safeguarding the judicial process, *cf. Moore v. Corpening*, No. 1:19-cv-91-FDW, 2019 WL 3432602, at *2 (W.D.N.C. July 30, 2019), the Court should deny Plaintiffs' third TRO motion as duplicative.

Dated: August 18, 2022

COREY F. ELLIS
UNITED STATES ATTORNEY

*s/ Beth Drake*
Beth Drake (#5598)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC   29201
Tel:   (803) 929-3061
Email:   Beth.Drake@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*s/ Cody T. Knapp*
CODY T. KNAPP (NY #5715438)
CASSANDRA M. SNYDER (DC #1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-5663
Fax: (202) 616-8460
Email: cody.t.knapp@usdoj.gov

*Counsel for Defendants*