IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Derek Clements, *et al.*,            )
                                     )
                Plaintiffs,          )
                                     )
        vs.                          )        Civil Action Number:  2:22-cv-02069-RMG
                                     )
Lloyd J. Austin, III, Secretary of   )
Defense,                             )
                                     )
                Defendant.           )

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' SECOND MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

BACKGROUND................................................................................................................3

I.      The COVID-19 Pandemic ...............................................................................3

II.     Department of Defense Vaccination Directives...............................................4

III.    The Armed Services' Implementation of the COVID-19 Vaccination
        Directive...........................................................................................................5

        A.      Exemptions From the COVID-19 Vaccination Directive..........................5

        B.      Possible Discipline for Refusing a Lawful Order To Be Vaccinated ........6

IV.     Other Litigation Over the Military's Vaccination Requirement............................8

V.      This Action ....................................................................................................10

        A.      Procedural History.................................................................................10

        B.      Current Status of the Plaintiffs..............................................................12

LEGAL STANDARDS....................................................................................................13

ARGUMENT..................................................................................................................14

I.      Plaintiffs Are Unlikely to Succeed in This Litigation.......................................14

        A.      Plaintiffs' Claims Are Not Justiciable......................................................14

                1.      Plaintiffs' Emergency-Use-Authorization Claims Are Moot. .......15

                2.      The USMA Cadets' Claims Are Not Ripe..................................16

                3.      None of the Plaintiffs Have Exhausted Their Administrative
                        Remedies. .............................................................................18

                4.      Plaintiffs' Claims Implicate Military Personnel Matters that
                        Do Not Warrant Judicial Review. ............................................21

        B.      Plaintiffs' Claims Lack Merit...................................................................24

                1.      The Directives Do Not Violate Emergency-Use
                        Authorization Requirements.....................................................24

                2.      The DoD Directive and the Service's Guidance Do Not
                        Contravene AR 40-562. ..........................................................26

                3.      Plaintiffs Cannot Establish Likely Success on the Merits of
                        Their Fifth Amendment Procedural Due Process Claim..............28

II.     Plaintiffs Do Not Face Irreparable Harm. .......................................................30

III.    The Equities and the Public Interest Weigh Against a Preliminary
        Injunction. ....................................................................................................32

CONCLUSION...............................................................................................................35

## INTRODUCTION

In warfare, disease has historically accounted for more service member deaths than battlefield injuries, and a healthy fighting force has long been a key part of America's military readiness. Prior to the COVID-19 pandemic, the Department of Defense's ("DoD") decades-old immunization program required that all service members obtain at least nine immunizations, and up to an additional eight depending on circumstances. In the midst of a deadly pandemic that has killed over one million Americans, and seeking to protect the health and readiness of the Armed Forces by reducing the risk of hospitalizations and deaths among service members, DoD added vaccination against COVID-19 to this long list of immunizations required for service members.

Plaintiffs here challenge the military's COVID-19 vaccination requirement on its face. *See* Am. Compl., ECF No. 33 ¶¶ 46–50. Plaintiffs, who are fifteen cadets from three different service academies—the U.S. Air Force Academy ("USAFA"), the U.S. Military Academy ("USMA"), and the U.S. Coast Guard Academy ("USCGA")—and nine active-duty and reserve personnel of the Air Force, present three theories under which the military's COVID-19 vaccination requirement violates the Administrative Procedure Act ("APA"). First, Plaintiffs assert that the COVID-19 vaccination requirement is inconsistent with 10 U.S.C. § 1107a and Department of Defense Directive ("DoDI") 6200.02, both of which concern the use of a vaccine under emergency-use authorization ("EUA"). *See* Am. Compl. ¶¶ 63–75. Second, they allege that the requirement "violat[es] . . . service regulations" because it allegedly conflicts with Army Regulation 40-562 ("AR 40-562")[1] concerning medical exemptions for preexisting immunity. *See* Am. Compl. ¶¶ 76–84. And third, Plaintiffs give these arguments a constitutional gloss, contending that because the COVID-19 vaccination requirement allegedly contravenes 10 U.S.C. § 1107a, DoDI 6200.02,

---

[1] AR 40-562 is a joint service regulation that also applies to the other Services. *See* https://perma.cc/L32S-7SCN. For the Air Force it is known as Air Force Instruction (AFI) 48-110_IP, and for the Coast Guard it is known as Coast Guard Commandant Instruction ("CG COMDTINST") M6230.4G. For ease of reference and to remain consistent with Plaintiffs' briefing, this brief cites the regulation with its Army designation, AR 40-562.

and AR 40-562, it also violates the Fifth Amendment's guarantee of procedural due process. *See* Am. Compl. ¶¶ 85–95. Plaintiffs have moved for a preliminary injunction that would prevent Defendant from enforcing the military's COVID-19 vaccination requirement against Plaintiffs and taking any adverse action against them for noncompliance. *See* ECF No. 34 ("Pls.' Br."). But Plaintiffs fail to establish any of the grounds required for such extraordinary relief. Accordingly, Plaintiffs' motion should be denied.

First, Plaintiffs are not entitled to preliminary injunctive relief because the claims they press are not likely to succeed. As an initial matter, Plaintiffs' claims are not justiciable. Plaintiffs' challenges to a purported requirement to receive an "unlicensed" COVID-19 vaccine are moot because the FDA-approved COMIRNATY-labeled vaccine is now available in the United States and has been offered to these Plaintiffs. *See infra* at 15. Setting aside mootness, the Plaintiffs who are USMA cadets would still lack ripe claims because they have not received a final decision concerning any discipline based on their failure to obey their vaccination orders, nor have they actually been subject to any final adverse action. And all of the Plaintiffs may still avail themselves of extensive administrative procedures for challenging disciplinary actions that have been or may yet be taken in connection with the COVID-19 vaccination requirement, meaning that judicial review of those actions is unavailable. Moreover, judicial review in this case would require this Court oversee and manage discretionary decisions about military personnel matters, which is clearly improper. In light of these justiciability problems, Plaintiffs are not likely to succeed on the merits of their claims.

Even if the Court could reach the substance of Plaintiffs' claims, those claims still would be unlikely to succeed. Plaintiffs fail to establish likely success on the merits of their APA claim related to the use of an EUA vaccine because, as explained below, only FDA-approved vaccines are required under the relevant policies. Plaintiffs' APA claim that Defendant's conduct violates AR 40-562, which does not require the Services to offer medical exemptions based on preexisting

immunity, similarly fails. And Plaintiffs' claim based on the Fifth Amendment right to due process is essentially a restatement of their other two claims, so that claim fails for all the same reasons. In any event, the Fifth Amendment cannot support any order for preliminary relief because Plaintiffs have not separately briefed that claim, identified any constitutionally protected interest, or established that the Services' existing processes are contrary to military regulations.

Finally, Plaintiffs have neither demonstrated irreparable injury nor shown that the balance of equities and public interest weigh in their favor. If Plaintiffs ultimately prevail, they may be reenrolled in the relevant military institution and obtain appropriate recompense, including potential back pay. In the meantime, the public interest strongly favors the military's vaccination mandate to protect the health of the force and, in particular, the military's authority to consider vaccination status in making determinations about assignments and whether to disenroll and separate military members and cadets who have refused to comply with a lawfully issued order. In short, there is no cause to award Plaintiffs any injunctive relief, let alone on an emergency basis.

The Court should deny Plaintiffs' motion.

## BACKGROUND

### I.    The COVID-19 Pandemic

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19 that can result in severe symptoms and death. *See* CDC, *COVID-19*, https://perma.cc/A9D5-AUHV.[2] COVID-19 "spreads when an infected person breathes out droplets and very small particles that contain the virus." CDC, *How COVID-19 Spreads* (updated July 14, 2021), https://perma.cc/4ZBC-8WYQ. It has caused a global pandemic and spread rapidly throughout the United States, leading the President to declare a national emergency. *See Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Pres. Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020). To date, COVID-19 has infected more than 93 million Americans and has killed

---

[2] The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007).

over one million. *See* CDC, *COVID Data Tracker* (last visited Aug. 23, 2022), https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

In total, 96 military service members have died from COVID-19, and nearly 400,000 have contracted the disease. *See* Ex. 3, Decl. of Maj. Scott Stanley ¶ 3. Of those 96 service members, only two were fully vaccinated. *See id.* Many otherwise healthy service members have also developed "long-haul" COVID-19 after contracting the disease, potentially affecting their long-term ability to perform their missions. *See* Ex. 4, Decl. of Col. Tonya Rans, M.D. ¶¶ 9–10.

## II.    Department of Defense Vaccination Directives

Vaccines have played a longstanding and important role in America's military readiness.[3] Under DoD's current immunization program, all service members are required to have received nine vaccines (including an annual flu vaccine), and an additional eight vaccines are required when certain elevated risk factors are present. *See* AR 40-562, Tbl. D-1; DoDI 6205.02 (July 23, 2019), https://perma.cc/8HLA-AXQB. Vaccination is part of DoD's overarching requirement, called Individual Medical Readiness, that each service member be medically ready for service and mobilization. *See* DoDI 6025.19, https://perma.cc/TR75-JRVD. DoD has determined that "[t]o maximize the lethality and readiness of the joint force, all Service members are expected to be deployable." DoDI 1332.45 ¶ 1.2, https://perma.cc/9FNU-ZR89. DoD generally aligns its immunization requirements and eligibility determinations for service members with

---

[3] Military deaths due to infectious diseases outnumbered those due to direct combat injuries until World War II, when vaccines became widespread. *See* Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* at 3, National Academies Press, 2002, https://perma.cc/E545-TQ9G. Even recently, disease accounted for nearly 70% of U.S. Army hospital admissions during the Persian Gulf War. *See id.* at 10, Fig. 1-1.

Military-mandated vaccines mitigate this threat and reduce infectious-disease morbidity and mortality among military personnel. *See id.* at 10–11 (highlighting the historical use of vaccines in armed conflict). The U.S. military instituted its first immunization program in 1777 when General Washington directed the inoculation of the Continental Army for smallpox. *See id.* at 12, Tbl. 1-1. And for the past several decades, the military has implemented a variety of enduring or situational inoculation measures to maintain the readiness of its force. *See* Bryce H.P. Mendez, Cong. Rsch. Serv., IF10530, *Defense Health Primer: Military Vaccinations* (updated Aug. 6, 2021), https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

recommendations from the CDC and its Advisory Committee on Immunization Practices. *See* DoDI 6205.02 at 3, https://perma.cc/8HLA-AXQB. The military's service branches have separately issued regulatory guidance for administering vaccines to service members, including processes to seek medical and administrative exemptions, including religious accommodations. *See* AR 40-562, Ch. 2-6; Ex. 5, Decl. of Col. Kevin J. Mahoney ¶ 11; Ex. 9, Decl. of Rear Admiral Eric C. Jones ¶¶ 4–17.

On August 9, 2021, noting the impact of COVID-19 on military readiness and concluding that vaccination "will ensure we remain the most lethal and ready force in the world," Defendant (the Secretary of Defense) announced that he would add the COVID-19 vaccine to the list of vaccines required for all service members by the earlier of mid-September 2021 or upon approval by the Food and Drug Administration ("FDA"). *See* Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. On August 24, 2021, one day after FDA announced the approval of the Pfizer vaccine, the Secretary directed the Secretaries of the Military Departments to immediately ensure that all members of the Armed Forces under DoD authority were fully vaccinated against COVID-19. *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758.

## III.    The Armed Services' Implementation of the COVID-19 Vaccination Directive

Shortly after Defendant issued the COVID-19 vaccination directive, each of the Services issued initial implementing guidance, setting deadlines for full vaccination. *See* Sec'y of Air Force Mem. (Sept. 3, 2021), https://perma.cc/6E2W-3EQM (Air Force); Ex. 5, Mahoney Decl. ¶¶ 7–8 (Army); Ex. 9, Jones Decl. ¶ 4 (Coast Guard).

### A.  Exemptions From the COVID-19 Vaccination Directive

The guidance of each Service establishes processes for granting medical and administrative exemptions from the military's vaccine requirement, including through religious accommodations. Service members are not required to receive a COVID-19 vaccine if they have an exemption or if

any exemption request is pending.

*Medical Exemptions.*  Service members may be granted a medical exemption if, for example, they currently have COVID-19, are pregnant, or are allergic to an ingredient in the vaccine.  *See* Ex. 12, Decl. of Col. Atemio Chapa ¶ 6 (Air Force); Ex. 5, Mahoney Decl. ¶ 11 (Army); Ex. 9, Jones Decl. ¶ 6–8 (Coast Guard).

*Administrative Exemptions.*  Service members who, for example, are on terminal leave (*i.e.*, they are no longer coming into their workspace and are taking leave until the date they retire or separate from service) or who are otherwise retiring or separating from military service in the near future may be granted an administrative exemption.  *See, e.g.*, Ex. 12, Chapa Decl. ¶ 4; Ex. 5, Mahoney Decl. ¶ 11; Ex. 9, Jones Decl. ¶ 9.

*Religious Accommodations.*  Service members also may seek a religious accommodation from the vaccination directive, which is a specific form of administrative exemption.  *See* Ex. 13, Decl. of Maj. Matthew Streett ¶ 4; Ex. 5, Mahoney Decl. ¶ 15; Ex. 9, Jones Decl. ¶ 10.  Religious accommodation requests (or "RARs") undergo a multi-stage review process before the approval authority makes a final decision whether to approve or deny the request.  *See* Ex. 13, Streett Decl. ¶¶ 4–16; Ex. 5, Mahoney Decl. ¶¶ 15–21; Ex. 9, Jones Decl. ¶¶ 10–13.

## B.  Possible Discipline for Refusing a Lawful Order To Be Vaccinated

If a service member refuses a lawful order to take the COVID-19 vaccine and does not have a pending or approved exemption, commanders may take certain actions, depending upon the service member's status.

*Air Force Service Members.*  As discussed in Defendants' first brief in opposition to a preliminary injunction, *see* ECF No. 20, at 8–9, if active-duty members or Traditional Reservists in the Air Force refuse to be vaccinated against COVID-19 and do not have a pending or approved exemption, they may be subject to a variety of administrative and disciplinary actions.  *See* Ex. 14, Decl. of Col. Elizabeth Hernandez ¶¶ 3–17.  However, in order to comply with a preliminary

injunction entered by the United States District Court for the Southern District of Ohio, the Air Force is not currently enforcing the COVID-19 vaccination directive against service members (including USAFA cadets) who submitted RARs to the Air Force prior to July 27, 2022, were confirmed as having had a sincerely held religious belief by or through Air Force Chaplains, and had their requests denied or not fully adjudicated.  *See Doster v. Kendall*, No. 1:22-cv-84, (S.D. Ohio July 14, 2022), ECF No. 72.  All of the Air Force Plaintiffs in this case are being treated as though they fall within the *Doster* class definition, and so none of them are currently subject to administrative and disciplinary action based on their refusal to become vaccinated against COVID-19.[4]  *See* Ex. 16, Suppl. Decl. of Brig. Gen. Paul Moga ¶ 12; Ex. 17, Decl. of Col. Jason Trew ¶ 3; Ex. 18, Decl. of Lt. Col. Richard D. Colon ¶ 3; Ex. 19, Decl. of Lt. Col. Colby Leathers ¶ 3; Ex. 20, Decl. of Col. Corey A. Simmons ¶ 8.

*Service Academy Cadets.*  Cadets at the USMA and USCGA are subject to certain administrative and disciplinary actions for their refusal to be vaccinated against COVID-19. Commanders may issue administrative reprimands and counsel cadets who, absent an exemption, refuse to comply with the lawful order to become vaccinated against COVID-19.  *See, e.g.*, Ex. 5, Mahoney Decl. ¶ 24; Ex. 6, Decl. of Col. Wilson R. Rutherford IV ¶ 7; Ex. 10, Decl. of Rear Admiral William Kelly ¶ 8; Ex. 11, Coast Guard Superintendent Instruction M5215.2N § 2.D.4. If a cadet remains noncompliant, then they may be subject to disenrollment for deficient conduct or unsuitability for service.  *See* Ex. 5, Mahoney Decl. ¶¶ 23–24; Ex. 6, Rutherford Decl. ¶ 6; Ex. 9, Jones Decl. ¶ 18; Ex. 11, SUPINST M5215.2N § 2.D.4.  Before a Superintendent may notify a cadet of disenrollment, cadets are entitled to respond and, in some circumstances, to participate in a hearing.  *See, e.g.*, Ex. 6, Rutherford Decl. ¶ 7; Ex. 11, SUPINST M5215.2N § 2.D.1.d.  If a cadet

---

[4] The government has filed an appeal of the class-wide preliminary injunction and the class certification in *Doster*, as well as a motion to stay the class-wide preliminary injunction pending appeal.  The district court in *Doster* denied the motion to stay the class-wide preliminary injunction pending appeal, and the government has appealed that decision as well.  The appellate briefing on the motion to stay the preliminary injunction pending appeal will be complete by August 26, 2022.

is finally disenrolled, depending upon the circumstances of disenrollment, the cadet may be required to reimburse the Government for education costs. *See* Ex. 9, Jones Decl. ¶ 24; Ex. 6, Rutherford Decl. ¶ 20. However, the USCGA cadets who are Plaintiffs in this case have been informed that they will not be subject to recoupment for the cost of their cadet education. *See* Ex. 9, Jones Decl. ¶ 24.

## IV.   Other Litigation Over the Military's Vaccination Requirement

In addition to this case, there have been numerous other challenges to the military's vaccination requirement brought in district courts across the country. At least fifteen courts have either rejected similar claims for preliminary injunctive relief against the military or dismissed the plaintiff service members' claims altogether.[5] And recently, in *Dunn v. Austin*, 142 S. Ct. 1707

---

[5] *See Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224 (N.D. Fla. 2021) (denying preliminary injunction on Fifth Amendment, APA, and other statutory claims against DoD); *Abbott v. Biden*, --- F. Supp. 3d ----, 2022 WL 2287547, at *7 (E.D. Tex. June 24, 2022) (denying preliminary injunction on Tenth Amendment and APA claims against DoD), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022); *Roth v. Austin*, --- F. Supp. 3d ----, 2022 WL 1568830, at *31 (D. Neb. May 18, 2022) (denying preliminary injunction on First Amendment and statutory claims against DoD and Air Force), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022); *Knick v. Austin*, No. 22-1267, 2022 WL 2157066, at *3 (D.D.C. June 15, 2022) (denying preliminary injunction on Fifth Amendment, First Amendment, statutory, and APA claims against DoD and Air Force); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022) (denying preliminary injunction on and dismissing APA, constitutional, and other statutory claims against DoD), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021) (denying preliminary injunction on Fifth Amendment, First Amendment, and statutory claims against DoD and Navy); *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022) (denying preliminary injunction on Fifth Amendment, First Amendment and statutory claims against Navy), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Creaghan v. Austin*, --- F. Supp. 3d ----, 2022 WL 1500544 (D.D.C. May 12, 2022) (denying preliminary injunction on constitutional and statutory claims against Space Force), *appeal filed*, No. 22-5135 (D.C. Cir. May 20, 2022); *Thomas Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022) (denying preliminary injunction on statutory claim against Marine Corps), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) (dismissing constitutional and statutory claims against Army); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022) (denying preliminary injunction on constitutional and statutory claims against Marine Corps), *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022); Ex. 21, *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) ("*Dunn* Op.") (denying preliminary injunction on constitutional and statutory claims against Air Force); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245 (W.D. Okla. 2021) (denying preliminary

(2022), where a district court had denied the service member's preliminary-injunction motion, the Supreme Court also denied the service member's application for an injunction pending appeal.

Six courts have preliminary enjoined DoD and the respective service from applying COVID-19 vaccination requirements or taking adverse action against plaintiffs in those cases.[6] The government has filed appeals in five of those cases. In *Austin v U.S. Navy SEALs 1-26*, the Supreme Court granted the government's application for a partial stay of the district court's injunction. 142 S. Ct. 1301, 1301 (2022).[7] Similarly, in *Navy SEAL 1 v. Biden*, the Eleventh Circuit stayed the district court's injunction pending appeal "insofar as it precludes the Navy from considering the plaintiffs' vaccination status in making deployment, assignment, and other operational decisions." No. 22-10645 (11th Cir. Mar. 30, 2022).

---

injunction on constitutional and statutory claims against DoD); *Guettlein v. U.S. Merch. Marine Acad.*, 577 F. Supp. 3d 96 (E.D.N.Y. 2021) (denying preliminary injunction on constitutional claims against United States Merchant Marine Academy, DoD, and Navy); *Miller v. Austin*, --- F. Supp. 3d ----, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022) (denying preliminary injunction and temporary restraining order on constitutional claims against Air Force based on lack of ripeness).

[6] *See Navy SEALs 1–26 v. Biden*, --- F. Supp. 3d ----, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022); *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022) (Merryday, J.); *Colonel Fin. Mgmt. Off. v. Austin*, No. 8:22-cv-01275 (M.D. Fla. Aug. 18, 2022) (Merryday, J.); *Air Force Off. v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022); *Poffenbarger v. Kendall*, --- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022), *appeal dismissed*, 2022 WL 3029325 (6th Cir. June 30, 2022); *Doster v. Kendall*, --- F. Supp. 3d ----, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022). The district court in *Doster* subsequently certified a class and has issued a preliminary injunction enjoining the Air Force from enforcing the COVID-19 vaccination requirement against the class members. *See Doster v. Kendall*, No. 1:22-cv-84, (S.D. Ohio July 14, 2022), ECF No. 72; *see also* Defs.' Notice, ECF No. 27. Similarly, in *Colonel Financial Management Officer*, the district court—after separating the case from *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429 (M.D. Fla.) and creating a new case number—has also certified a class and issued a preliminary injunction enjoining the Marine Corps from enforcing the COVID-19 vaccination requirement against class members. *See Colonel Financial Management Officer v. Austin*, No. 8:22-cv-01275 (M.D. Fla. Aug. 18, 2022).

[7] The district court in *Navy SEALs 1-26* subsequently entered a class-wide preliminary injunction against the Navy, which the Government has also appealed.

V.    **This Action**

A.  **Procedural History**

On June 29, 2022, Plaintiffs brought this suit against the Secretary of Defense, the Secretaries of the Air Force and the Army, the Commandant of the Coast Guard, and the Superintendents of the USAFA, the USMA, and USCGA, *see* Compl., ECF No. 1 ¶¶ 28–34, and filed their first motion for a preliminary injunction and temporary restraining order, *see* ECF No. 4.  Plaintiffs sought relief, among other things, for purported violations of the Religious Freedom Restoration Act ("RFRA") and the First Amendment.  *See* Compl. ¶¶ 77–85.

On July 15, 2022, Defendants moved to sever the claims of each individual Plaintiff and dismiss the claims of the twenty Plaintiffs who had no connection to the District of South Carolina. ECF No. 15 at 1.  The Court granted that motion, explaining that:

> [P]roper adjudication of the RFRA and First Amendment claims would, by necessity, require individualized assessments of the vastly different work assignments and duty stations of the Plaintiffs spread across at least eight states and require in each mini-trial the testimony of front line supervisors, other supervisory staff, senior leadership at the applicable military base or service academy, and medical and epidemiological specialists involved in the individual applications for religious exemption.

*Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3224604, at *2 (D.S.C. July 27, 2022). After dismissing without prejudice the claims of the twenty Plaintiffs without proper venue in the District of South Carolina, the Court assigned the remaining Plaintiffs to four separate dockets: No. 2:22-cv-02069 (Plaintiff Clements); No. 22-cv-02411 (Plaintiff Kloster); No. 22-cv-02412 (Plaintiff Pokrant); and No. 22-cv-02413 (Plaintiff Vasiliu).  *See Clements*, 2022 WL 3224604, at *3.

Thereafter, on August 1, 2022, Plaintiff Clements moved for reconsideration of this Court's severance order and, simultaneously, all Plaintiffs sought leave to amend their complaint "to remove the causes of action predicated on the Religious Freedom Restoration Act and First Amendment, and to dismiss all Defendants except for Defendant Secretary of Defense."  ECF No.

28, at 1; *see also* Proposed Am. Compl., ECF No. 28-2.  In their motion for leave to amend, Plaintiffs also proposed to rejoin in this action the twenty dismissed service members and the three severed service members.  *See* Proposed Am. Compl. ¶¶ 2–24.  Defendants opposed the motion for reconsideration and, while not opposing leave to file the proposed amended complaint, reserved all defenses to the amended complaint.  *See* ECF No. 31.  On August 9, 2022, the Court granted leave to file the proposed amended complaint and denied the motion for reconsideration.  *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3224667 (D.S.C. Aug. 9, 2022).

Plaintiffs filed an amended complaint on August 15, 2022.  ECF No. 33.  In the amended complaint, Plaintiffs dropped their RFRA and First Amendment claims but continued to challenge Defendant's August 24, 2021 directive "that all service members and cadets be fully vaccinated [against COVID-19] with a licensed vaccine," Am. Compl. ¶ 32 (internal quotation marks omitted), asserting theories under the Fifth Amendment and the APA, *id.* ¶¶ 63–95.  The amended complaint substantially differed from the previously proposed amended complaint by naming new Plaintiffs (five cadets at the USMA) and an additional Defendant (Coast Guard Commandant Admiral Linda L. Fagan), and by challenging not only Secretary Austin's August 24, 2021 Memorandum but also Admiral Fagan's implementation of that memorandum.  *See id.* ¶¶ 18–22, 33, 49.  Plaintiffs also filed a renewed motion for a preliminary injunction and temporary restraining order, seeking to enjoin "Defendants Secretary Austin and Admiral Fagan from enforcing their unlawful COVID-19 vaccine mandates and from disciplining Plaintiffs on the basis of remaining unvaccinated."  Pls.' Br. at 1.  Plaintiffs' motion purports to seek relief as to all Plaintiffs, though it "specifically" complains that "all [USCGA] cadets have been ordered disenrolled from the Academy, and all [USMA] cadets have been directed not to attend classes while their disenrollments are being processed."  *Id.*

The following day, on August 16, Plaintiffs filed a third motion for a temporary restraining order, this time limiting their motion to the USCGA cadet Plaintiffs and seeking to restrain the

Coast Guard from acting adversely against them. ECF No. 35. Defendants filed their response in opposition to Plaintiffs' motion on August 18. *See* ECF No. 36.

On August 19, 2022, the Court denied Plaintiffs' third motion for a temporary restraining order. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3593621 (D.S.C. Aug. 19, 2022). In its order, the Court noted that the amended complaint "deviated from the proposed amended complaint previously submitted to the Court," and that "adding additional parties to the amended complaint, beyond that requested by Plaintiffs and authorized by the Court, was plainly improper." *Id.* at *1. To address this problem with the amended complaint, the Court struck the improperly added parties, including Admiral Fagan, "as beyond the scope of the Court's order granting leave to amend." *Id.* And because Admiral Fagan was "no longer a party to this pending lawsuit," *id.*, and Plaintiffs otherwise had "failed to establish that they [met] the very high standards for a TRO on any of the four [required] factors," *id.* at *2, the Court found that Plaintiffs were not entitled to a temporary restraining order.

### B. Current Status of the Plaintiffs

Following the Court's August 19 order dismissing the improperly added parties, the remaining Plaintiffs in this action are fifteen cadets from three different service academies—eight at the USAFA, two at the USMA, and five at the USCGA—and nine active-duty and reserve personnel of the Air Force. *See* Am. Compl. ¶¶ 1–17, 23–29. All seventeen Air Force and USAFA Plaintiffs are being treated as class members in *Doster*, and thus the Air Force is not currently processing them for separation or other discipline. *See* Ex. 16, Moga Suppl. Decl. ¶ 12; Ex. 17, Trew Decl. ¶ 3; Ex. 18, Colon Decl. ¶ 3; Ex. 19, Leathers Decl. ¶ 3; Ex. 20, Simmons Decl. ¶ 8; *see also* Order, *Doster*, No. 1:22-cv00084 (S.D. Ohio July 27, 2022), ECF No. 77 at 2. And though the two USMA cadets—Roman Penney and Andrew Wojtkow—have not yet become vaccinated against COVID-19, they have pending medical exemption requests, Ex. 7, Suppl. Decl. of Col. Wilson R. Rutherford IV ¶¶ 1–2, and so they are currently exempt from the vaccination

requirement, Ex. 5, Mahoney Decl. ¶ 21. They cannot be involuntarily separated or otherwise disciplined for refusing to be vaccinated while their medical exemption requests remain pending. *See id.* And contrary to the assertions in Plaintiffs' second motion for a temporary restraining order and preliminary injunction, *see* Pls.' Br. at 1, the USMA cadets are permitted to attend classes currently. Ex. 7, Supp. Rutherford Decl. ¶ 3.

The five USCGA cadets— Nathan Aime, Tabitha Aime, Sophia Galdamez, Dayna Johnson, and Jin Johnson—were disenrolled from the USCGA effective August 15, when their disenrollment appeals were denied. *See* ECF No. 36-1, Casavant Decl. ¶ 2. As of 8:00 p.m. on August 19, all five USCGA cadets had departed the USCGA campus, consistent with their receipt of orders to report to a temporary duty station at their homes. The Coast Guard will not finally separate the USCGA cadets until at least September 1, 2022, and the cadets remain in paid status pending any final separation. *See id.* ¶ 5.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Both preliminary injunctions and temporary restraining orders "involv[e] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted). Plaintiffs must "*by a clear showing*" establish that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Plaintiffs must establish each of the four factors in order to qualify for injunctive relief, *see Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (acknowledging that the Fourth Circuit recalibrated its preliminary injunction balancing test in light of the Supreme Court's decision in *Winter*).

Additionally, courts extend great deference to the military when called to review the

"complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which are "essentially professional military judgments." *Winter*, 555 U.S. at 24 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan*, 413 U.S. at 10; *see also Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise[, and] [t]he responsibility for determining how best our Armed Forces shall attend to that business rests with Congress [] and with the President."); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981) (noting that because of the "healthy deference to legislative and executive judgments in the area of military affairs," courts employ a relaxed scrutiny in reviewing military policy); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Such deference extends to cases involving constitutional claims and military decisions about the health and welfare of the troops. *See Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

**ARGUMENT**

**I.      Plaintiffs Are Unlikely to Succeed in This Litigation.**

Plaintiffs' motion for a preliminary injunction fails, first and foremost, because Plaintiffs have not made the requisite "clear showing" of "a substantial likelihood of success on the merits." *Mazurek*, 520 U.S. at 971–72.

**A.  Plaintiffs' Claims Are Not Justiciable.**

To demonstrate a likelihood of success on the merits, a plaintiff must show that he has the right to bring his suit, *see Nationsbank Corp. v. Herman*, 174 F.3d 424, 427 (4th Cir. 1999), and also, in military cases, that "the court would even elect to hear his complaint [rather than] defer to the military's judgment in making internal decisions," *Irby v. U.S. Dep't of the Army*, 245 F. Supp. 2d 792, 798 (E.D. Va. 2003). Here, Plaintiffs cannot make either of these threshold showings.

1.  <u>Plaintiffs' Emergency-Use-Authorization Claims Are Moot.</u>

Plaintiffs assert, as a basis for preliminary relief, that the COVID-19 vaccination requirement forces "military personnel to submit to an unlicensed vaccination without providing personnel the opportunity to refuse without consequence." Pls.' Br. at 15; Am. Compl. ¶¶ 63–75. These claims center on allegations that Secretary Austin has unlawfully "ordered all service members [to] be inoculated with the EUA Pfizer-BioNTech vaccine." Am. Compl. ¶ 69. But no service member has been required to take a vaccine authorized only for emergency use to comply with DoD's directive, *see infra* Section I.B.1, and in any event Plaintiffs' "EUA" claim is now moot, *see Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) ("A case becomes moot, and therefore nonjusticiable, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (internal quotation marks omitted)); *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022) ("[Courts] may only decide cases that matter in the real world at the time that [they] decide them." (internal quotation marks omitted)).

Plaintiffs' EUA claim is premised on the notion that "[n]ot one single vaccine in the United States at the time of the DoD's mandate was FDA-licensed." Pls.' Br. at 16. But even if that allegation were correct—which, as explained *infra* § I.B.1, it is not—factual developments have rendered the claim moot. On May 20, 2022, Pfizer-BioNTech's COMIRNATY-labeled vaccine became available for ordering. COMIRNATY is an FDA-licensed vaccine "indicated for active immunization to prevent [COVID-19] caused by [SARS-CoV-2] in individuals 16 years of age and older." FDA, BLA Approval (Aug. 23, 2021), https://perma.cc/2QGR-7B8B. "To date, DoD has received over 42,000 doses within its supply chain and there are no restrictions to ordering this product." Ex. 4, Rans Decl. ¶ 19. Moreover, each of the seven cadet Plaintiffs have been offered COMIRNATY-labeled vaccine, including through an offer communicated to Plaintiffs' counsel on August 18. ECF No. 36-1, Casavant Decl. ¶ 3 (noting that USCGA cadets were also offered COMIRNATY-labeled vaccine by the Coast Guard). Given the availability of COMIRNATY-labeled vaccines, Plaintiffs now "lack a legally cognizable interest" in the resolution of their claims

about vaccines authorized for emergency use. *Eden*, 36 F.4th at 169 (citation omitted); *see also Norris v. Stanley*, 558 F. Supp. 3d 556, 559 (W.D. Mich. 2021) (finding no likelihood of success on EUA claim because it "would be moot" if plaintiffs were offered the BLA-approved Pfizer vaccine); *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280-83 (D.C. Cir. 2012) (Kavanaugh, J.) (explaining that availability of vaccines other than the ones to which plaintiffs objected eliminated plaintiffs' standing). Accordingly, Plaintiffs are not likely to succeed on those claims, and they cannot support Plaintiffs' request for a preliminary injunction.

2. <u>The USMA Cadets' Claims Are Not Ripe.</u>

Another threshold matter precludes injunctive relief as to the USMA cadets, who are unlikely to succeed on the merits because their claims are not ripe. In assessing ripeness, courts "consider[] the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013). "[A] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013) (internal quotation marks omitted). But "[w]here an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). Hardship "is measured by the immediacy of the threat and the burden imposed on the plaintiff" if judicial consideration is withheld. *Lansdowne,* 713 F.3d at 199 (internal quotation marks omitted).

Ripeness doctrine "originates in the case or controversy constraint of Article III." *Scoggins*, 718 F.3d at 269 (internal quotation marks omitted). "By requiring presentation of a controversy in a 'clean-cut and concrete form,' ripeness doctrine ensures that [courts] only reach questions 'when the action is final and not dependent on future uncertainties or intervening . . . rulings.'" *Ballantyne Vill. Parking, LLC v. City of Charlotte*, 818 F. App'x 198, 202 (4th Cir. 2020)

(quoting *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019)). "In the administrative context," the requirement of ripeness "'protect[s] . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 92 (D. Md. 2021) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33, (1998)); *see also Wild Va. v. Council on Env't Quality*, 544 F. Supp. 3d 620, 633 (W.D. Va. 2021) (noting the same), *appeal filed*, No. 21-1839 (4th Cir. Aug. 2, 2021).

The two USMA cadets' claims are not fit for judicial resolution because it is not clear whether they will even be required to become vaccinated against COVID-19.  As of now, they both have pending medical exemption requests.  Addressing these Plaintiffs' claims even before the military finally has determined that they must become vaccinated against COVID-19 would "embroil[]" the Court "in controversies not yet of a suitable form for judicial decision," *Am. Fed'n of Gov't Emps.* ("*AFGE*") *v. Off. of Special Counsel*, 1 F.4th 180, 188 (4th Cir. 2021), and "compel [it] to speculate, improperly," *id.* at 189, as to how the Army would apply the directive to those Plaintiffs.   Such premature judicial review would profoundly conflict with long-standing and binding principles of inter-branch comity and judicial restraint in the military context.  *See Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) ("[T]he Navy has an extraordinarily compelling interest . . . over decisions about military readiness"); *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").  The military must have the opportunity, in the first instance, to determine how its policies should be applied.  *See Miller*, 2022 WL 3584666, at *3 ("Courts must not interfere until the military chain of command has been able to fully adjudicate the issues and issue a final decision.").

The USMA cadets also fail to establish that they will suffer any hardship from having their claims adjudicated in the ordinary course. Their claims are now "primed for further development through established agency channels." *AFGE*, 1 F.4th at 190. And as discussed *infra* in Section II, they will suffer no irreparable harm between now and any final determination in those agency decisionmaking processes. Yet by "thrust[ing] their case into the lap of this [C]ourt," Plaintiffs seek the sort of "premature interference in administrative affairs" that the Supreme Court and the Fourth Circuit have repeatedly rejected, and they saddle this Court with a case of "fundamental indeterminacy unsuited to resolution in an Article III forum." *AFGE*, 1 F.4th at 190.

### 3. None of the Plaintiffs Have Exhausted Their Administrative Remedies.

Moreover, none of the Plaintiffs have properly exhausted available intraservice remedies, and so all of their claims are not justiciable for that reason as well. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). These purposes are particularly salient in the military context, where courts rightly exhibit "an unwillingness to secondguess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions." *Mindes v. Seaman,* 453 F.2d 197, 199 (5th Cir.1971). Thus, the Fourth Circuit has held that "a court should not review internal military affairs 'in the absence of,'" among other things, "'exhaustion of available intraservice corrective measures.'" *Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985) (quoting and adopting *Mindes*); *see also Roe v. DOD*, 947 F.3d 207 (4th Cir. 2020) (affirming *Mindes* as good law in the Fourth Circuit).

With respect to the USMA cadets, if their medical exemption requests are denied and they subsequently receive a separation order based on their failure to follow a lawful order to vaccinate, they will have several administrative remedies available to them. Under the USMA cadet disciplinary system, refusal to follow a lawful order to vaccinate is considered a conduct deficiency. Ex. 6, Rutherford Decl. ¶ 7. "When a cadet is alleged to have committed a conduct

deficiency, the cadet will be afforded a hearing." *Id*. ¶ 8.  In particular, when a cadet refuses to follow a lawful order to vaccinate, he or she is provided a "formal misconduct hearing"—rather than a "standard misconduct hearing"—to ensure that he or she receives "as much due process as the USMA disciplinary system allows." *Id*.[8]  Formal misconduct hearings are heard by a board of three commissioned officers, which may rule on all factual questions.  *See id*. ¶¶ 10–11.  In addition, the USMA Staff Judge Advocate appoints a legal advisor for each misconduct hearing to rule on any legal questions that may arise.  *See id*. ¶ 11.  After the board has received all evidence and heard all argument, it may make findings and recommendations supported by a preponderance of the evidence and based on a majority vote.  *See id*. ¶ 15.  The legal advisor reviews those findings and recommendations for legal sufficiency.  *See id*.  Thereafter, a record of the hearing is compiled and forwarded to the Commandant of Cadets.  *See id*. ¶ 16.  The Commandant provides the record and the recommendation to the cadet for rebuttal.  *See id*.  Following any rebuttal, the USMA Staff Judge Advocate reviews the case file and provides yet another legal review before forwarding the file to the Superintendent of the USCGA.  The Superintendent reviews the full record before making, as appropriate, a discipline recommendation or final determination.  *See id*. ¶¶ 16, 18.[9]

Even following any final order of separation, the USMA cadets may pursue yet other administrative remedies, such as correction of their military record and reinstatement through their

---

[8] Prior to a formal misconduct hearing, the board provides the cadet with a notification memorandum and a copy of any and all relevant documents.  *See* Ex. 6, Rutherford Decl. ¶ 12. The notification memorandum provides, among other things, the matters to be investigated and the cadet's various rights, including the right to counsel, the right against self-incrimination, and the right to be present at the hearing and to offer evidence, call witnesses, and make opening and closing statements.  *See id*.  Regarding the right to counsel, cadets may obtain civilian counsel, may be represented by attorneys assigned to the U.S. Army Trial Defense Service, or may do both. *See id* ¶ 9.  During a formal misconduct hearing, legal counsel may sit with the cadet at "counsel's table" and provide representation throughout.  *See id*.

[9] If the cadet has not yet commenced his or her third year—and therefore has not yet accrued any service obligation—then the Superintendent has final approval authority for separation.  *See* Ex. 6, Rutherford Decl. ¶ 18.  If the cadet has already commenced his or her third year, then the Assistant Secretary of the Army, Manpower and Reserve Affairs, has final approval authority for separation.  *See id*. ¶ 19.

Service's Board for Correction of Military Records. *See, e.g.*, Ex. 5, Mahoney Decl. ¶¶ 33–34; *cf.* *Roe v. Shanahan*, 359 F. Supp. 3d 382, 403 (E.D. Va. 2019) (noting that a Board for Correction of Military Records "can reverse an order of separation, edit a servicemember's military record, and issue back pay"). The same is true for the USCGA cadets and Air Force Plaintiffs. *See* Ex. 9, Jones Decl. ¶ 18; Ex. 14, Hernandez Decl. ¶ 17. In short, because no Plaintiff has yet "pursued all of [their] administrative remedies within the military," and because the intraservice remedies certain Plaintiffs have pursued are "not yet complete," *Fourte v. Spencer*, No. 3:18-cv-2212-JMC, 2018 WL 3829232, at *3 (D.S.C. Aug. 13, 2018), Plaintiffs do not satisfy the exhaustion requirement imposed by *Williams* and *Mindes*.

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs contend that "further exhaustion is futile" because "the very individual who set in motion the guidance on denying the religious accommodations—the Service Secretary—would be the one subsequently denying any such correction board decision." Pls.' Br. at 14.[10] But the administrative procedures established for review of separation decisions are not empty formalities; rather, they engage all levels of the military command in reasoned decisionmaking to find facts and make determinations about military needs and legal requirements. *See Mark Short*, 2022 WL 1051852, at *4 (rejecting the argument that such administrative remedies would be futile, finding "no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember"); *Roth*, 2022 WL 1568830, at *15; *Creaghan*, 2022 WL 1500544, at *10. Further, no matter a plaintiff's expectations about the probable outcome of administrative proceedings, the military "should be given the opportunity to fully evaluate its position and, within those parameters, review" its tentative decisions, in order to provide "a definitive interpretation of the [applicable] regulation and an explication of the relevant facts from the highest administrative

---

[10] This reference to "religious accommodations" appears to be a relic of Plaintiffs' first motion for a preliminary injunction premised on RFRA and the First Amendment. But Plaintiffs' amended complaint asserts no RFRA or First Amendment claims, so Plaintiffs' complaints about the religious accommodation process have no relevance here.

body in the [military's] own appellate system." *Von Hoffburg v. Alexander*, 615 F.2d 633, 639 (5th Cir. 1980) (citation omitted). Indeed, in cases (like this one) involving the application of military regulations, the Fourth Circuit has specifically emphasized the military Services' "far greater experience . . . in deciphering the content and effect of military regulations" and indicated that the relevant administrative bodies "should be permitted to exercise [their] expertise" in such cases. *Williams*, 762 F.2d at 360 (quoting *Navas v. Gonzalez Vales*, 752 F.2d 765, 769–70 (1st Cir. 1985)). Accordingly, Plaintiffs' expectation that they will not prevail in administrative proceedings does not excuse their failure to exhaust administrative remedies.

Plaintiffs' fallback argument—that "there is no adequate relief available through the Services' correction boards" fares no better. Pls.' Br. at 15. For one thing, that argument does not excuse Plaintiffs' failure to exhaust their remedies *before* final separation in the first instance. But more fundamentally, controlling Fourth Circuit precedent precludes Plaintiffs' argument: "[T]he inability of the board to give the plaintiff all the relief he seeks does not automatically excuse the failure to exhaust." *Guerra v. Scruggs*, 942 F.2d 270, 277 (4th Cir. 1991); *see also Williams*, 762 F.2d at 360 (noting that determining the proper application of military regulation "is a task for which the ABCMR was created" (quoting *Navas*, 752 F.2d at 770)).

Because Plaintiffs have not pursued their claims through all available administrative procedures, and because Plaintiffs' failure to do so will deprive the Services of appropriate opportunities to build a factual record and determine in the first instance whether a Plaintiff should be granted relief, this Court should find Plaintiffs' claims fail for lack of exhaustion. *Accord Church*, 573 F. Supp. 3d at 137–38; *Robert*, 2022 WL 103374, at *3; *Knick*, 2022 WL 2157066, at *3; *Mark Short*, 2022 WL 1051852, at *4.

4. Plaintiffs' Claims Implicate Military Personnel Matters that Do Not Warrant Judicial Review.

Even if Plaintiffs had properly exhausted all available administrative remedies before bringing this action, their claims would remain unreviewable. Applying *Mindes*, courts in the

Fourth Circuit weigh four factors to determine whether well-pleaded and properly exhausted claims concerning internal military matters are justiciable: (1) the nature and strength of the plaintiff's challenge, (2) the potential injury if review is refused, (3) the type and degree of anticipated interference with the military function, and (4) the extent to which the exercise of military expertise or discretion is involved. *See Williams*, 762 F.2d at 359-60. Plaintiffs' claims falter on all counts. *First*, as discussed *infra* Section I.B, Plaintiffs' claims are weak and are unlikely to succeed on the merits. *Second*, as explained *supra* at 14–19, and *infra* Section II, Plaintiffs are not likely to suffer substantial harm absent this Court's review. *Finally*, Plaintiffs seek relief that would substantially interfere with military functions that involve exercises of quintessential military expertise and discretion.

In order to redress their complaints of "swift efforts to discipline, separate, and disenroll them," Pls.' Br. at 11, Plaintiffs ask this Court to enjoin "any adverse action against Plaintiffs for failing to obtain the vaccine pending final resolution of this case," *id.* at 24. Such an order would necessarily involve this Court in a multitude of assignment-related decisions made in the day-to-day running of the Armed Services, including assessments regarding Plaintiffs' ranks, fitness, and duties. But intrusive judicial oversight of that kind, involving military personnel matters, runs afoul of longstanding precedent. *See, e.g.*, *Orloff*, 345 U.S. at 94–95; *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 444–45 (6th Cir. 2017); *Cargill v. Marsh*, 902 F.2d 1006, 1007 (D.C. Cir. 1990) (per curiam); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978); *Sebra v. Neville*, 801 F.2d 1135, 1141 (9th Cir. 1986); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir. 1985); *Cortright v. Resor*, 447 F.2d 245, 254 (2d Cir. 1971); *Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013). And it also would squarely conflict with the Supreme Court's recent decision to partially stay a similar injunction in *Navy SEALs 1-26*. As Justice Kavanaugh observed in that case, "the 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments.'" 142

S. Ct. at 1302 (Kavanaugh, J., concurring) (quoting *Gilligan*, 413 U.S. at 10); *see also Winter*, 555 U.S. at 24 (emphasizing that the Supreme Court gives "great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest" (internal quotation marks omitted)).     Compounding the problems with Plaintiffs' requested relief, "courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." *Guerra*, 942 F.2d at 280; *cf. Miller*, 2022 WL 3584666, at *3 ("While federal courts may exercise jurisdiction over military matters when substantial constitutional rights are threatened, the military has a unique chain of command structure that operates in compliance with military procedure and custom. Because of this unique structure, courts should hesitate before deciding a case which asks the court to interfere with military matters."). And so, in the context of this case, which implicates, among other things, "the need for discipline and duty in the military," *id.*, the Court should not accept Plaintiffs' invitation to exercise jurisdiction over assignment and other operational military decisions.

This conclusion is only reinforced in the particular circumstances of the USMA and USCGA cadet Plaintiffs—the only Plaintiffs facing even a theoretical possibility of discipline at this time. The "core of the [military] academies' mission" is to provide student cadets with the training necessary to be commissioned as military officers upon graduation. DoDI 1322.22, https://perma.cc/5HCR-SLHG; *see also* Ex. 6, Rutherford Decl. ¶ 3; Ex. 10, Kelly Decl. ¶ 3; Ex. 15, Decl. of Brigadier General Paul Moga ¶ 4. And the Supreme Court has held that "[i]t is obvious that the commissioning of officers in the [military] is a matter of discretion within the province of the President as Commander in Chief," and courts "have never assumed by any process to control the appointing power." *Orloff*, 345 U.S. at 90. Yet an order requiring Defendant to treat the cadet Plaintiffs no differently than their unvaccinated counterparts at the military academies would, for all practical purposes, be an order to continue educating the cadet Plaintiffs and to commission them as officers upon graduation. Such an order would clearly interfere with "the commissioning

of officers," *id.*, and that alone is sufficient to deny Plaintiffs' motion for a preliminary injunction.

**B. Plaintiffs' Claims Lack Merit.**

Given all of the "impediments to even reaching the merits" in this case, *Munaf v. Geren*, 553 U.S. 674, 690 (2008), respectfully, the Court should find that Plaintiffs are not entitled to the preliminary injunction that they seek. But if the Court does reach the substance of Plaintiffs' claims, it should find them wholly without merit and deny Plaintiffs' motion for a preliminary injunction on that basis as well.

1. The Directives Do Not Violate Emergency-Use Authorization Requirements.

Plaintiffs' EUA challenge to the COVID-19 vaccination requirement fails both because it has been rendered moot, *see supra* Section I.A.1, and because it is premised on the mistaken belief that DoD requires service members to receive vaccines that have not been FDA-approved. While EUA vaccines may satisfy the DoD's vaccination requirement, EUA vaccines are not mandated. FDA-approved COVID-19 vaccines are available within DoD—and indeed have been offered directly to Plaintiffs—and thus the requirements of 10 U.S.C. § 1107a and DoDI 6200.02 do not apply.

Congress has given Defendant and the Services wide latitude to establish a vaccination program for the welfare of the troops. *See* 10 U.S.C. §§ 113(b), 7013(b)(9), 8013(b)(9), 9013(b)(9); DoDI 6205.02, https://perma.cc/8HLA-AXQB. Section 1107a of Title 10 places conditions on that authority: It requires the President of the United States to waive a notification requirement if the military seeks to require service members to take products authorized only for "emergency use" (referred to as "emergency-use authorization" or "EUA") without providing certain information.[11]

---

[11] At least one court has held that 10 U.S.C. § 1107a "only requires that [Plaintiffs] have been *informed* [of] . . . a choice whether to get the vaccine or not and to be told of what consequences may follow if [they] decide[] to not get the vaccine." *Miller v. Austin*, No. 4:22-cv-01739, ECF No. 9 at 3 (S.D. Tex. June 1, 2022) (denying preliminary injunction based on alleged 10 U.S.C. § 1107a violation). Plaintiffs do not allege that they were not informed of a choice and the potential consequences—*i.e.*, discipline for failure to follow a lawful order to vaccinate.

DoD's directive does not implicate that provision because it does not require service members to take an EUA-authorized vaccine.  *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758 ("Mandatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance."); *see also* Sec'y of Air Force Mem. (Sept. 3, 2021), https://perma.cc/6E2W-3EQM; Ex. 8, FRAGO 5 ¶ 3.D.8.A; ALCOAST 305-21 ¶ 3.  And contrary to Plaintiffs' allegations, the FDA-licensed vaccine is available to Plaintiffs.  On August 23, 2021, FDA approved the Pfizer-BioNTech COVID-19 vaccine under the name "COMIRNATY" for its intended use by people aged 16 years and older.  *See* FDA, BLA Approval (Aug. 23, 2021), https://perma.cc/2QGR-7B8B; *see also* Am. Compl. ¶ 41; Ex. 2, Decl. of Peter Marks ¶ 6.[12]  FDA also contemporaneously reissued Pfizer's EUA, explaining that "[t]he licensed vaccine [i.e., COMIRNATY] has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns."  Ex. 2, Marks Decl. ¶ 10; Am. Compl. ¶ 43.  DoD relied on this FDA determination, as well as FDA guidance that health care providers may "use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine."  Ex. 1, Acting Assistant Secretary of Defense Memorandum.  This is consistent with the text and purpose of § 1107a.

In addition, according to FDA, vaccines produced at facilities listed in Pfizer's Biologics License Application (BLA)[13] and released in accordance with BLA requirements are "manufactured in compliance with the BLA" and "are not subject to the EUA requirements when used for the approved indication."  Ex. 2, Marks Decl. ¶ 13 & Ex. B at 27 (discussing identification

---

[12] FDA has since issued two supplemental approvals of COMIRNATY.  *See* FDA, Supplement Approval (Dec. 16, 2021), https://perma.cc/A4X9-3S6W; FDA, Supplement Approval (July 8, 2022), https://perma.cc/MXN6-FG2L

[13] Manufacturers must obtain an FDA-approved BLA in order to ensure that their products are safe.  *See* 42 U.S.C. § 262(a)(2)(C)(i)(I) ("The Secretary shall approve a biologics license application . . . on the basis of a demonstration that . . . the biological product that is the subject of the application is safe, pure, and potent").

of BLA-compliant lots). These vaccines are manufactured in compliance with the BLA even though they bear the EUA label. *See id*.

In other words, DoD has COMIRNATY-labeled vaccine, BLA-compliant doses of the Pfizer-produced vaccine, and EUA doses that are interchangeable with the licensed vaccine. *See* Ex. 4, Rans Decl. ¶ 19 ("The DoD has received hundreds of thousands of Pfizer-BioNTech BLA-compliant, EUA-labeled COVID-19 vaccine doses and continues to use them."); *id*. ("DoD has received over 42,000 [Pfizer-BioNtech COMIRNATY-labeled vaccine] doses within its supply chain."). And contrary to Plaintiffs' assertions, *see* Pls.' Br. at 16, Plaintiffs have indeed already been offered the COMIRNATY-labeled vaccine. The USCGA cadets have been offered COMIRNATY by the Coast Guard, *see* ECF No. 36-1, Casavant Decl. ¶ 3, and all Plaintiffs have been offered COMIRNATY during the course of this litigation. And even aside from the FDA-approved vaccines that DoD has in its possession, Plaintiffs may alternatively satisfy the vaccination requirement by obtaining a vaccine from a civilian healthcare provider. *See, e.g.*, Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758 (requirement applies only to those not already "fully vaccinated").

Accordingly, Plaintiffs do not have a likelihood of success on the merits of their EUA claim because the DoD directive can be satisfied by use of a vaccine that FDA has licensed as safe and effective for its intended use—Pfizer's FDA-licensed vaccine (COMIRNATY), Pfizer's BLA-compliant vaccine, or another FDA-licensed vaccine offered in the United States via a civilian healthcare provider (such as Spikevax). *See Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1171 (D.N.M. 2021) (rejecting claim that state vaccine mandate violated the EUA statute because "the FDA has now given its full approval – not just emergency use authorization – to the Pfizer vaccine"), *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022).

    2.  The DoD Directive and the Service's Guidance Do Not Contravene AR 40-562.

Plaintiffs assert that AR 40-562[14] mandates a "natural immunity" medical exemption from

---

[14] *See supra* note 1.

26

the COVID-19 vaccine.  *See* Pls.' Br. at 10, 18–19; Am. Compl. ¶¶ 80, 91.  But the plain text of AR 40-562 makes clear that Plaintiffs are mistaken in describing AR 40-562 as mandating a "natural immunity" medical exemption from COVID-19 vaccination.

AR 40-562 states that a determination for a medical exemption is "based on the health of the vaccine candidate and *the nature of the immunization under consideration*," AR 40-562, Ch. 2-6(a) (emphasis added), and "[f]or *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that *may* eliminate unnecessary immunizations," AR 40-562, Ch. 2-1(g) (emphasis added).  Thus, under AR 40-562, service members with previous infections or positive serology are not automatically exempt from full vaccination requirements.[15]  *See* Ex. 5, Mahoney Decl. ¶ 12; Ex. 12, Chapa Decl. ¶¶ 5, 18 n.14.  Therefore, in not including a medical exemption for service members who have previously been infected with COVID-19, the DoD directive and the Services' guidance are wholly in accord with AR 40-562.  For this reason, the cases cited by Plaintiffs to the point that the military must comply with its own regulations, *see* Pls.' Br. at 18–19, are easily distinguished.

Plaintiffs incorrectly allege "DoD and its subordinates recognized that their own regulations required consideration of one's natural and prior immunity."  *Id.* at 19.  Plaintiffs' sole support for this contention is a newspaper article from the *Army Times* that cites—without providing a link to—an information paper authored by DoD personnel.  *See* Davis Winkie, *Here's the Army rule for vaccine refusals, which service leaders brushed up on this summer*, Army Times (Aug. 25, 2021), https://perma.cc/LP2V-Z6ZV.  Newspaper articles do not constitute admissible evidence.  *See Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003) ("This circuit has

---

[15] Indeed, the only natural-immunity "presumption" referenced in AR 40-562 pertains to the specific immunization for measles, mumps, and rubella, where the Services are to "[p]resume immunity through infection for persons born in 1957 or earlier."  AR 40-562, Ch. 4-9(b).  No similar presumption is granted with respect to persons born after 1957, or with respect any other required immunization regardless of year of birth, AR 40-562, Ch. 4, reflecting the basic scientific fact that while some infections or immunizations provide life-long immunity, others—such as the flu—do not.

consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein." (quotation and citation omitted)). Information papers that have not even been provided to the Court similarly do not constitute admissible evidence. Regardless, neither the article nor the referenced information paper support Plaintiffs' argument. Indeed, the article itself describes the information paper as merely summarizing AR 40-562, notes that the information "paper does not mention COVID-19 by name," clarifies that AR 40-562 was "in force before the COVID-19 vaccines were even developed," and concludes that "it's not yet clear whether the natural immunity exemption will apply to the COVID-19 vaccine." Davis Winkie, *Here's the Army rule for vaccine refusals, which service leaders brushed up on this summer*, Army Times (Aug. 25, 2021), https://perma.cc/LP2V-Z6ZV. Accordingly, Plaintiffs fail to establish likelihood of success on the merits of their natural-immunity claim.

3. <u>Plaintiffs Cannot Establish Likely Success on the Merits of Their Fifth Amendment Procedural Due Process Claim.</u>

Plaintiffs fail entirely to make any argument regarding their Fifth Amendment procedural due process claim. Plaintiffs reference the Fifth Amendment exclusively in their argument on irreparable harm, and then only to summarily note that "Defendants' violations of Plaintiffs' Fifth Amendment rights constitute per se irreparable harm." Pls.' Br. at 21. As the moving party bears the burden of establishing likelihood of success on the merits, this is fatal to Plaintiffs' Fifth Amendment claim. *Cf. Stogsdill v. S.C. Dep't of Health & Hum. Servs.*, No. 3:12-CV-7-JFA, 2021 WL 6618274, at *4 n.7 (D.S.C. Dec. 21, 2021) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (citation omitted)), *appeal filed*, No. 22-1069 (4th Cir. Jan. 20, 2022).

Even setting aside Plaintiffs' failure to present any Fifth Amendment argument, Plaintiffs' procedural due process claim would nonetheless fail on the merits. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'

interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The hallmark of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also id.* at 335. Plaintiffs fail to show that Defendant and the Services have contravened their own regulations, which, as outlined above, provide for ample due process. Indeed, the Services provide significant process with multiple layers of review and opportunity to be heard. *See supra* at 5–7; 18–19.

Moreover, Plaintiffs also fail to identify any constitutionally-protected interest to give rise to a procedural due process claim. "[T]here is no constitutionally-protected property interest in continued military service or the employment benefits that come with military service." *Smith v. Harvey*, 541 F. Supp. 2d 8, 15 (D.D.C. 2008). Rather, "[i]t is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service." *Brown v. McHugh*, 972 F. Supp. 2d 58, 66 (D.D.C. 2013) (quoting *Pauls v. Sec'y of the Air Force*, 457 F.2d 294, 297 (1st Cir. 1972)); *see also Guerra*, 942 F.2d at 278 (holding that enlisted service members have no property interest in continued employment with the military); *Doe v. Garrett*, 903 F.2d 1455, 1462 (11th Cir. 1990) ("[A] military officer's expectation of continued military employment does not rise to the level of a property interest unless it is rooted in some statute, regulation, or contract."); *Sims v. Fox*, 505 F.2d 857, 862–64 (5th Cir. 1974) (finding no property or liberty interest in plaintiff's discharge from military service); *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 8 (D.D.C. 2000), *aff'd*, 6 F. App'x 3 (D.C. Cir. 2001); *Navas*, 752 F.2d 765; *Rich v. Sec'y of the Army*, 735 F.2d 1220 (10th Cir. 1984); *Woodard v. Marsh*, 658 F.2d 989 (5th Cir. 1981); *Ampleman v. Schlesinger*, 534 F.2d 825 (8th Cir. 1976).

Plaintiffs' claim further fails because it is premised on an incorrect understanding of the Services' regulations. Plaintiffs' complaint—which does not carry their burden for a preliminary injunction regardless—argues that Defendant's alleged "fail[ure] to follow [his] own regulations"

constitutes a due process violation. Am. Compl. ¶ 90. But as explained above, Defendant has not violated either AR 40-562 or DoDI 6200.02. *See supra* Sections I.B.2, I.B.3.

## II.    Plaintiffs Do Not Face Irreparable Harm.

Plaintiffs must make "a clear showing" of likelihood of irreparable harm as a condition for the grant of a preliminary injunction. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). It is not enough simply to "show[] some possibility of irreparable injury." *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (internal quotation marks omitted); *see also Winter*, 555 U.S. at 22 (explaining that issuing a preliminary injunction "based only on a possibility of irreparable harm" would be "inconsistent" with treating a preliminary injunction as an "extraordinary remedy"). Moreover, the harm "must be 'neither remote nor speculative, but actual and imminent.'" *Direx Israel, Ltd.*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)).

In addition, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (citation omitted). And "[i]n the context of 'military personnel decisions, . . . courts have held that the showing of irreparable harm must be *especially strong* before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs." *Church*, 573 F. Supp. 3d at 145 (citation omitted). Plaintiffs make no such showing.

As explained in Defendants' response to Plaintiffs' third motion for a temporary restraining order, a mere "delay in completing courses" due to disenrollment "from [a military academy] does not necessarily constitute irreparable harm," and Plaintiffs make no attempt to argue to the contrary. ECF No. 36 at 5–6 (quoting *Spadone v. McHugh*, 842 F. Supp. 2d 295, 302 (D.D.C. 2012) (holding former cadet disenrolled from United States Military Academy failed to show that he would suffer irreparable harm if he was not reenrolled)); *see also Martin v. Stone,* 759 F. Supp.

19, 21 (D.D.C. 1991) (stating that "the fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation" did not constitute irreparable harm); *Hamblet v. Brownlee,* 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004) (holding that the possible damage to USMA cadet's reputation and career caused by a nine-month suspension did not constitute irreparable injury); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (inability to continue as medical student without interruption is not a harm that is irreparable to potential medical career).[16]

Moreover, courts have consistently found that military administrative and disciplinary actions, including separation, are not irreparable injuries because the service member could later be reinstated if he prevailed on his claim. *See, e.g.*, *McCurdy v. Zuckert*, 359 F.2d 491, 493 (5th Cir. 1966) (finding that separation from service with "a general discharge" is not "irreparable"); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. U.S. Sec'y of the Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church*, 573 F. Supp. 3d at 145 (finding that adverse action such as "military discharge or a delayed promotion" that service members may face as a result of non-compliance with the DoD COVID-19 vaccine directive "is not irreparable") (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)); *Thomas Short*, 2022 WL 1203876, at *7–8. Thus, should Plaintiffs ultimately prevail on the merits of their claims, they may be reinstated and reenroll at their respective academies without suffering any

---

[16] Plaintiffs misstate the current status of the USMA cadets. Contrary to the assertions in Plaintiffs' motion, the USMA cadets have not "been directed not to attend classes while their disenrollments are being processed," nor "been served their disenrollment orders," nor do they "face certain disenrollment." Pls.' Br. at 1. Rather, the USMA cadets are currently attending classes, no disenrollment proceedings have been initiated, and no disenrollment proceedings will be initiated unless and until the USMA cadets' respective medical exemptions are denied on appeal and they continue to refuse to receive a vaccine. *See* Ex. 7, Suppl. Rutherford Decl. ¶ 3; Ex. 5, Mahoney Decl. ¶ 9. Even assuming disenrollment proceedings were to begin, the USMA cadets still would not "face certain disenrollment" given the extensive due process available to them throughout the course of disciplinary proceedings. *See supra* at 18–19. Counsel for Defendant informed Plaintiffs' counsel of all this within 24 hours of Plaintiffs filing their second motion for a preliminary injunction and temporary restraining order.

irreparable harm in the meantime.

Instead of arguing that separation or disenrollment constitutes irreparable harm, Plaintiffs argue that they are irreparably harmed due to the alleged injury to their Fifth Amendment rights. *See* Pls.' Br. at 20–21. But as discussed above, Plaintiffs fail to establish likelihood of success on the merits of their Fifth Amendment claims, so infringement is neither "threatened [nor] occurring." *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that to show irreparable harm based on loss of constitutional rights, movant must "show a likelihood of success on the merits"), *cert. denied*, 140 S. Ct. 1198 (2020); *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017) (denying preliminary injunction, "even assuming that every [constitutional] allegation constitutes an irreparable injury," where the other factors "weigh so heavily against Plaintiffs that they cannot prevail"); *Mark Short*, 2022 WL 1051852, at *9 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of his religious freedom claims, there is no presumption of irreparable harm."); Ex. 21, *Dunn* Op. at 45; *Thomas Short*, 2022 WL 1203876, at *7–8; *Creaghan*, 2022 WL 1500544, at *10 ("A mere 'possibility of irreparable harm' is not enough[.]") (citation omitted).

## III.     The Equities and the Public Interest Weigh Against a Preliminary Injunction.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decisively against granting a preliminary injunction here.

An order allowing Plaintiffs to remain at, or re-enroll at, USCGA and USMA would impose immediate and irreparable harm upon the Coast Guard and the Army. Plaintiffs' unvaccinated status threatens harm to themselves, other cadets, and faculty and staff. Cadets at USCGA and USMA live in constant close contact with other cadets. *See* Ex. 10, Kelly Decl. ¶ 3; Ex. 6,

Rutherford Decl. ¶ 3; *see, e.g.*, *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 133–34 (E.D.N.Y. 2021) (noting the city's "significant interest" in preventing the spread of COVID-19 among firefighters who work in "close proximity" with each other "while on duty, [and] in their fire stations"). Any argument by Plaintiffs that there is no need for them to comply with the vaccination mandate because most other cadets are protected by their own vaccination is manifestly meritless. *See Roth*, 2022 WL 1568830, at *27 ("[T]he 'everyone else did it so I don't have to' argument fails . . . . because the trustworthy scientific evidence in the record so far establishes that COVID-19 vaccinations reduce the chances of hospitalization and death of individual service members and the impact those events have on the force's and individuals' readiness and health.").

The public interest is also served where the service academies remain able to control where and how to assign cadets, including whether to disenroll and separate cadets. Cadets graduate into officers, and the national defense depends on service members' compliance with lawfully issued orders. *See, e.g.*, *United States. v. Hardy*, 46 M.J. 67, 74 (C.A.A.F. 1997) ("[The notion] that service members need not obey unpopular, but lawful, orders from either their civilian or military superiors . . . would be antithetical both to the fundamental principle of civilian control of the armed forces in a democratic society and to the discipline that is essential to the successful conduct of military operations."). A preliminary injunction plainly would undercut the maintenance of military good order and discipline. *See Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982))). No military can function where service members—especially student cadets not yet even commissioned—define the terms of their own military service, including which orders they choose to follow. *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with

military procedures and orders must be virtually reflex with no time for debate or reflection."). The injunction that Plaintiffs demand here may also encourage other cadets and service members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "'in the aggregate' present[s] the possibility of substantial disruption and diversion of military resources" and would severely undermine the kind of discipline and adherence to orders essential for military service. *Parrish*, 335 F. Supp. 2d at 669; *see Chappell*, 462 U.S. at 305 (courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have"); *Guerra*, 942 F.2d at 275 (expressing concern that injunctions in common discharge cases "would be routinely sought," resulting in improper "judicial second-guessing"); *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005) ("In evaluating the harm to the [military], the court must consider the aggregate harm of all these possible claims."); *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004) (similar). The military's judgments regarding risks to the health and readiness of its forces serve the public interest, outweigh any interests that Plaintiffs may have in premature preliminary relief, and, respectfully, are owed this Court's deference. *See Navy SEAL 1*, 2022 WL 1294486, at *16–17 (denying preliminary injunction); *Church*, 573 F. Supp. 3d at 147–48 (same); *Mark Short*, 2022 WL 1051852, at *9–10 (same); Ex. 21, *Dunn* Op. at 46–47 (same); *cf. Dunn*, 142 S. Ct. 1707 (declining to enter injunctive relief pending appeal of district court's denial of preliminary injunction motion); *Oklahoma*, 577 F. Supp. 3d at 1265.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: August 24, 2022

Respectfully submitted,

COREY F. ELLIS
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

*/s/ Beth Drake*
Beth Drake (#5598)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Phone: (803) 929-3061
Email: Beth.Drake@usdoj.gov

ALEXANDER K. HAAS
Director

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ Cassandra Snyder*
CODY T. KNAPP (NY #5715438)
CASSANDRA SNYDER (DC #1671667)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Attorneys for Defendant*