IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Charleston Division

| | |
|---|---|
| DEREK CLEMENTS, *et al.*, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 2:22-cv-02069-RMG |
| ) | |
| LLOYD J. AUSTIN, III, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**FOURTH SUPPLEMENTAL FILING IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs, by and through counsel, respectfully submit this Fourth Supplemental Filing in Support of Plaintiffs' Motion for a Preliminary Injunction.

Plaintiffs filed their Reply in Support of Plaintiffs' Motion for a Preliminary Injunction on August 31, 2022. Plaintiffs' Counsel then supplemented this filing on three subsequent occasions, as Plaintiffs' Counsel were subsequently made aware of critically important additional documentation. For the same reasons, Plaintiffs again submit the above-captioned filing to update the Court with yet another critical material development.

On December 23, 2022, President Biden signed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("FY23 NDAA") into law. Section 525 of the FY23 NDAA requires Defendant Department of Defense ("DoD") to rescind the mandate requiring members of the U.S. Armed Forces be vaccinated against COVID-19 pursuant to Defendant Secretary's memorandum dated August 24, 2021. Plaintiffs respectfully present the Court with two sets of documents related to this impending recission of the vaccine mandate: (1) a

December 23, 2022, DoD guidance titled "Public Affairs Guidance: Rescinding the Covid-19 Vaccination Mandate" (Exhibit 1), and (2) letters from members of Congress detailing the need to reinstate service members and cadets removed from service for refusing to comply with the mandate (Exhibit 2).

The first document reflecting this turn of events is an internal DoD guidance memorandum, in which Defendant has indicated that DoD will fully implement this requirement. *See* Dept. of Def., Public Affairs Guidance: Rescinding the Covid-19 Vaccination Mandate (Dec. 23, 2022) (Exhibit 1). Complete rescission of the mandate is to be effectuated within 30 days of the FY23 NDAA's signing into law. *Id.* Accordingly, the COVID-19 vaccine mandate is expected to be officially rescinded on or about January 23, 2023.

This guidance leaves open the consequences of this vaccine mandate's rescission. Nonetheless, it contains several critical admissions and noteworthy observations. First, DoD admits that it has discharged, as of November 30, 2022, 8,123 Service Members for refusing to receive a COVID-19 vaccine. Second, the guidance provides an incomplete list of arguably conflicting factors regarding reinstatement of discharged individuals, with the relevant portion of the guidance stating:

> REINSTATEMENT, BACK PAY, AND RECORDS
>
> Q: Can Service members who were involuntarily separated be reinstated? If yes, what will be the process?
>
> A: All Service members and Veterans may apply at any time to the appropriate Discharge Review Board or Board for Correction for Military/Naval Records if they believe that there is an error or injustice in their records.
>
> Q: Some members of Congress have indicated they will look next year to support ways to reinstate or provide back pay for Service members who were dismissed for refusing to take the vaccine. Does the Department support this potential legislation?

>A: The Department will provide its views on legislation of this nature at the appropriate time and through the appropriate process.
>
>Q: What happens to adverse actions in military personnel records for current or former Service members who refused to be vaccinated?
>
>A: Uniformed Code of Military Justice actions remain in the Service member's Official Military Personnel File.
>
>Q: Will Service members separated for refusing to be vaccinated be able to upgrade their discharge?
>
>A: All Service members and Veterans may apply at any time to the appropriate Discharge Review Board or Board for Correction for Military/Naval Records if they believe that there is an error or injustice in their records.

*Id.*[1] As indicated above, Defendant has not publicized any recognizable effort or plans to reinstate separated service members. This has prompted letters of concern from multiple members of congress, including Senator Lindsey Graham and Representative W. Gregory Steube. Exhibit 2.

Plaintiffs believe this filing is necessary to make the Court fully aware of this critical development and its effect on the case. First, the impending recission does not negate the illegality of the vaccine mandate, as the legality of an agency action is determined at the time of its issuance and cannot be justified or made legal post hoc. *See Dow AgroSciences LLC v. Nat'l Marine Fisheries Srv.*, 707 F.3d 462, 467-68 (4th Cir. 2013); 5 U.S.C. § 702. As Plaintiffs have diligently represented in their previous filings, Defendant's mandate order constitutes an illegitimate attempt to circumvent clear requirements for compelling service members to submit

---

[1] The DoD guidance states that "Our data and analysis does not indicate a direct correlation between the COVID-19 vaccination requirement and our current recruiting challenges." This position is contradicted by numerous observations of high-level military and civilian officials, including U.S. Marine Corps Commandant General David Berger. *See* Rebecca Kheel, *Vaccine Mandate Hurting Recruiting, Top Marines General Says*, Military.com (Dec. 4, 2022) https://www.military.com/daily-news/2022/12/04/vaccine-mandate-hurting-recruiting-top-marines-general-says.html.

3

to Emergency Use Authorization ("EUA") products. Under 10 U.S.C. § 1107a, Defendant cannot compel service members to adhere to a vaccination requirement for a product with an EUA designation in the absence of a Presidential waiver of the service members' consent rights. No such waiver was ever granted, including at the critical moment of the vaccine mandate order's issuance. Accordingly, as the order was illegal at its inception, and any subsequent (and now known to be imminently impending) recission does not absolve Defendant of its APA violation, nor of the damages that resulted therefrom.

Second, as alluded to in the section above, the impending order does not negate the havoc that the enforcement of the COVID-19 vaccine mandate wreaked on Plaintiffs, nor does it reinstate individuals already separated from the service. *See* Dept. of Def., Public Affairs Guidance: Rescinding the Covid-19 Vaccination Mandate (Dec. 23, 2022) (Exhibit 1); Exhibit 2. Plaintiffs received numerous deleterious and adverse effects on their careers for refusing to comply with an illegal order. There are six named Plaintiffs who have either been fully separated from their respective service, or who have been refused a commission: this includes the five already separated U.S. Coast Guard Academy Plaintiffs, N. Amie, T. Amie, S. Galdamez, D. Johnson, and J. Johnson, in addition to U.S. Air Force Academy Cadet N. Suess, who was denied his commission upon graduating. Accordingly, each of these six named Plaintiffs are at risk of not receiving full and adequate relief from the impending order to rescind the COVID-19 vaccine mandate. Defendant clearly acknowledges the future possibility of reinstatement, as seen in the above excerpt on reinstatement from DoD's recent guidance. Yet despite this reversal, it is unclear as to when Defendant intends to reinstate separated service members.

As highlighted in Senator Graham's letter to the Commandant of the U.S. Coast Guard Admiral Linda Fagan, there is a clear need to reinstate individuals already removed from service

for refusing to comply with the soon-to-be-rescinded COVID-19 vaccine mandate order. Exhibit 2. The separation and withholding of commission for the six named Plaintiffs would not have occurred but-for the vaccine mandate. The sole impetus for removing the U.S. Coast Guard cadets and for withholding commission was refusal to comply with an order which will no longer be in effect as of January 23, 2023, and which was illegal upon issuance. Accordingly, the basis for removal of these Plaintiffs is unfounded. Further, as presented in Plaintiffs' Motion for a Preliminary Injunction, this Court possesses the ability to order restorative preliminary injunctive relief. *See, e.g., Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013); *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) ("But a preliminary injunction can also act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it") (citing *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012)).

In light of this recent turn of events and pursuant to Plaintiffs' outstanding Motion for a Preliminary Injunction, Plaintiffs respectfully ask this honorable Court to grant restorative preliminary injunctive relief to said affected Plaintiffs and order their reinstatement and/or commission into their respective branches.

Respectfully submitted,

/s/ Michael T. Rose
Michael T. Rose (S.C. Bar No. 0004910)
Mike Rose Law Firm, PC
409 Central Ave.
Summerville, SC 29483
Telephone: (843) 871-1821
mike@mikeroselawfirm.com
*Local Counsel*

<u>*/s/ Carol A. Thompson*</u>
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
cthompson@fedpractice.com
*Admitted via Pro Hac Vice*

<u>*/s/ John J. Michels, Jr.*</u>
John J. Michels, Jr.
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
lmichels@fedpractice.com
*Admitted via Pro Hac Vice*

*Counsel for Plaintiffs*