IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Derek Clements, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action Number:  2:22-cv-02069-RMG |
| | ) | |
| Lloyd J. Austin, III, Secretary of Defense, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS
AND BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

BACKGROUND ......................................................................................................... 2

    I.    The Rescinded COVID-19 Vaccination Requirement ....................................... 2

    II.   This Lawsuit....................................................................................................... 4

        A.   2022 Proceedings ....................................................................................... 4

        B.   Current Status of the Plaintiffs................................................................. 6

        C.   The Instant Proceedings ........................................................................... 8

LEGAL STANDARDS ............................................................................................... 9

ARGUMENT ............................................................................................................. 10

    I.    The Court should not reconsider its mootness finding. ................................... 10

        A.   The Court properly assessed the scope of relief sought by Plaintiffs. ..........................11

        B.   The Court correctly found that the NDAA and rescission order mooted Plaintiffs' preliminary injunction motion....................................................... 13

        C.   Plaintiffs will not suffer manifest injustice absent reconsideration. ............................. 16

    II.   The Court should dismiss this case as moot. .................................................. 16

        A.   Plaintiffs' claims against the now-rescinded COVID-19 vaccination requirement are moot. .............................................................................. 17

        B.   At the very least, the Court should dismiss all Plaintiffs who do not seek reinstatement. ........................................................................................... 20

CONCLUSION ......................................................................................................... 21

**INTRODUCTION**

In June 2022, Plaintiffs filed this lawsuit to prevent their respective military services from requiring them to be vaccinated against COVID-19. Over the ensuing months, the parties vigorously litigated the legality of the military's vaccination policy. But in December 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023. That Act required the Secretary of Defense (the sole remaining Defendant in this case) to rescind the memorandum that established the military-wide COVID-19 vaccine requirement. Defendant has now done so, and the various military services are working diligently to implement that rescission, including by removing records of adverse actions taken against service members on the basis of that policy and, as described below, engaging with Plaintiffs impacted by the policy.

In the wake of these developments, this Court has correctly determined that Plaintiffs' latest motion for a preliminary injunction is moot. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2023 WL 2386118 (D.S.C. Mar. 7, 2023). The rescission of the COVID-19 vaccination requirement that Plaintiffs challenged here has provided Plaintiffs all the relief that they sought from the Court: They are no longer required to be vaccinated against COVID-19. Relatedly, the Court correctly found that Plaintiffs would need to seek leave to amend their complaint if they now wish to pursue "restorative" relief. Plaintiffs cannot show that these determinations were clearly erroneous, much less that they will cause the sort of manifest injustice that justifies reconsideration, and so their motion for reconsideration should be denied. The Court should also dismiss this case as moot. Plaintiffs cannot contend that they face imminent future harm from a now-defunct COVID-19 vaccination policy. Nor can they recharacterize this action for declaratory and injunctive remedies as one for compensatory relief. Because this case is now moot, the Court must dismiss it for lack of subject-matter jurisdiction.

1

## BACKGROUND

### I.    The Rescinded COVID-19 Vaccination Requirement

In early 2020, the deadly viral disease known as COVID-19 fundamentally altered life in the United States, military no less than civilian.  In order to protect service members' health and preserve the operational readiness of the armed forces, the Secretary of Defense directed the military services in August 2021 to begin ensuring that service members under their authority were fully vaccinated against COVID-19.  *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758.  The Army, Air Force, and Coast Guard subsequently issued orders implementing that requirement.  *See* Sec'y of Air Force Mem. (Sept. 3, 2021), https://perma.cc/6E2W-3EQM (Air Force); Mahoney Decl., ECF No. 20-11 ¶¶ 7–8 (Army); ALCOAST 305/21 (Aug. 26, 2021) (Coast Guard).  Consistent with their pre-existing policies, the military services permitted service members to seek medical, religious, or administrative exemptions from the COVID-19 vaccination requirement, based on individual circumstances.

In December 2022, however, the President signed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (NDAA), Pub. L. No. 117-263, 136 Stat. 2395 (2022). Section 525 of the NDAA directed the Secretary of Defense to rescind the August 2021 memorandum that established the COVID-19 vaccination requirement for members of the armed forces.  *See* 136 Stat. at 2571–72 ("Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding 'Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members.'").  An explanatory statement in the Congressional Record noted that the Department of Defense "has mechanisms to correct a servicemember's military record for discharge due to

failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022).

To comply with the NDAA, the Secretary of Defense rescinded the August 2021 COVID-19 vaccination memorandum on January 10, 2023. *See* Ex. 6, Sec'y of Def. Rescission Mem. (Jan. 10, 2023). In doing so, the Secretary instructed that current service members who sought an exemption from the vaccination requirement may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and required the military services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.* at 1. The Air Force, Army, and Coast Guard then similarly rescinded the COVID-19 vaccination requirement applicable to members of those services. *See* Ex. 7, Sec'y of the Air Force Memo (Jan. 23, 2023); Ex. 8, FRAGO 37 ¶ 3.D.30 (Jan. 11, 2023); Ex. 9, HQDA EXORD 174-23 (Mar. 7, 2023); Ex. 10, ALCOAST 012/23 (Jan. 11, 2023).

Since the rescission of the COVID-19 vaccination requirement, the services have worked to further implement the Secretary of Defense's rescission order in an orderly and uniform manner. They immediately stopped all involuntary administrative separations that resulted from a service member's refusal to become vaccinated against COVID-19. *See* Ex. 10, ALCOAST 012/23; Ex. 11, Sec'y of the Air Force Memo (Feb. 24, 2023); Ex. 12, Sec'y of the Army Memo (Feb. 24, 2023); Ex. 8, FRAGO 37 ¶ 3.D.30. They have cancelled policies that imposed COVID-19 vaccination requirements for assignments, training, education, command positions, and permanent change of station orders. *See* Ex. 13, ALCGENL 013/23 ¶ 3 (Jan. 25, 2023) (relating to enlisted members); Ex. 14, ALCGOFF 005/23 ¶ 3 (Jan. 26, 2023) (relating to officers); Ex. 11, Sec'y of the Air Force Memo (Feb. 24, 2023); Ex. 12, Sec'y of the Army Memo (Feb. 24, 2023) ¶ 2

3

(rescinding all Army policy associated with mandate implementation); Ex. 15, FRAGO 38 ¶ 3.D.15 (rescinding prohibition on travel). And as to individuals who were previously expelled from the service academies based on their vaccination status or who were denied commissions upon graduation, the services have invited those students to seek readmission or to accept a commission. *See, e.g.*, Ex. 2, Decl. of Aaron J. Casavant ¶ 2; Ex. 3, Casavant Script at 2; Ex. 4, Casavant Email re Readmission; Ex. 5, Decl. of Beth A. Claude ¶ 3.

## II.    This Lawsuit

### A.  2022 Proceedings

Plaintiffs filed this suit on June 29, 2022, and they moved to preliminarily enjoin the Secretary of Defense, the Secretaries of the Air Force and the Army, the Commandant of the Coast Guard, and the Superintendents of the U.S. Air Force Academy (USAFA), the U.S. Military Academy (USMA), and the U.S. Coast Guard Academy (USCGA) from enforcing the military's COVID-19 vaccination requirement. *See* Compl., ECF No. 1 ¶¶ 28–34; Pls.' First Motion for TRO & PI, ECF No. 4. Plaintiffs sought relief, among other things, from purported violations of the Religious Freedom Restoration Act ("RFRA") and the First Amendment. *See* Compl. ¶¶ 77–85.

On July 15, 2022, Defendants moved to sever the claims of each individual Plaintiff and to dismiss the claims of the twenty Plaintiffs who had no connection to the District of South Carolina. Defs.' Motion to Sever, ECF No. 15, at 1. The Court granted that motion. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3224604, at *2–3 (D.S.C. July 27, 2022).

Plaintiffs moved for reconsideration of this Court's severance order and, simultaneously, sought leave to amend their complaint "to remove the causes of action predicated on the Religious Freedom Restoration Act and First Amendment, and to dismiss all Defendants except for Defendant Secretary of Defense." Pls.' Severance Recon. Motion, ECF No. 28, at 1; *see also*

Proposed Am. Compl., ECF No. 28-2. In their motion for leave to amend, Plaintiffs proposed to rejoin in this action the twenty dismissed service members and the service members whose claims had been severed. *See* Proposed Am. Compl. ¶¶ 2–24. Defendants opposed the motion for reconsideration and, while not opposing leave to file the proposed amended complaint, reserved all defenses to the amended complaint. *See* Defs.' Response, ECF No. 31. Ultimately, the Court granted Plaintiffs leave to file the proposed amended complaint and denied the motion for reconsideration. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3224667 (D.S.C. Aug. 9, 2022).

Plaintiffs then filed their amended complaint on August 15, 2022. *See* Am. Compl., ECF No. 33. In it, continued to challenge the August 24, 2021 directive "that all service members and cadets be fully vaccinated [against COVID-19] with a licensed vaccine," Am. Compl. ¶ 32 (internal quotation marks omitted), asserting theories under the Fifth Amendment and the APA, *id.* ¶¶ 63–95. The amended complaint that Plaintiffs filed differed from their previously proposed amended complaint, naming new Plaintiffs (five cadets at the USMA) and an additional Defendant (Coast Guard Commandant Admiral Linda L. Fagan). *See id.* ¶¶ 18–22, 33, 49.

Plaintiffs also filed a second motion for a preliminary injunction and temporary restraining order, seeking to enjoin "Defendants Secretary Austin and Admiral Fagan from enforcing their unlawful COVID-19 vaccine mandates and from disciplining Plaintiffs on the basis of remaining unvaccinated." Pls.' Second Motion for TRO & PI, ECF No. 34, at 1. Plaintiffs purported to seek relief as to all Plaintiffs, though they "specifically" complained that "all [USCGA] cadets [had] been ordered disenrolled from the Academy, and all [USMA] cadets ha[d] been directed not to attend classes while their disenrollments [were] being processed." *Id.*

The following day, on August 16, 2022, Plaintiffs filed a third motion for a temporary restraining order, this time limiting their motion to the USCGA cadet Plaintiffs and asking the Court to "order [the] Coast Guard to refrain from taking any further adverse action" pending resolution of the second motion for a preliminary injunction.  Pls.' Third Motion for TRO, ECF No. 35, at 3.  Defendants filed their response in opposition to Plaintiffs' motion on August 18.  *See* Defs.' Response to Pls.' Third TRO Motion, ECF No. 36.

On August 19, 2022, the Court denied Plaintiffs' third motion for a temporary restraining order.  *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2022 WL 3593621 (D.S.C. Aug. 19, 2022).  In its order, the Court noted that the amended complaint "deviated from the proposed amended complaint previously submitted to the Court," and found that "adding additional parties to the amended complaint, beyond that requested by Plaintiffs and authorized by the Court, was plainly improper."  *Id.* at *1.  To address this problem with the amended complaint, the Court struck the improperly added parties, including Admiral Fagan, "as beyond the scope of the Court's order granting leave to amend."  *Id.*[1]  And because Plaintiffs had "failed to establish that they [met] the very high standards for a TRO on any of the four [required] factors," *id.* at *2, the Court denied Plaintiffs' motion for a temporary restraining order.

### B.  Current Status of the Plaintiffs

Following the Court's August 19 order, the remaining Plaintiffs in this action are fifteen cadets from three different service academies—eight at the USAFA, two at the USMA, and five at the USCGA—and nine active-duty and reserve personnel of the Air Force.  *See* Am. Compl. ¶¶ 1–17, 23–29.  Of those Plaintiffs, only six faced any consequences as a result of their non-compliance with the now-rescinded requirement to become vaccinated against COVID-19.  One USAFA cadet,

---

[1] With Admiral Fagan struck from this case, the Secretary of Defense remains as the lone Defendant.

Nathan Suess, was not commissioned into the Air Force upon his graduation from the USAFA in spring 2022. *See id*. ¶ 17. And the five USCGA cadets—Nathan Aime, Tabitha Aime, Sophia Galdamez, Dayna Johnson, and Jin Johnson—were disenrolled from the USCGA and later separated from the Coast Guard on September 23, 2022. *See* Pls.' Second Suppl., ECF No. 49.

In the time since the Secretary of Defense rescinded the COVID-19 vaccination requirement in January 2023, the Coast Guard and the Air Force have communicated with Plaintiff Suess and the USCGA cadets about their interest in resuming their military service. *See, e.g.*, Ex. 2, Decl. of Aaron J. Casavant ¶ 2 ("I called each of the remaining CGA cadet plaintiffs in this case, as well as four former CGA cadets who voluntarily resigned from CGA for reasons related to the Covid-19 vaccination mandate."); Ex. 5, Decl. of Beth A. Claude ¶ 3 ("In light of the [Department of the Air Force's] COVID-19 vaccine mandate rescission, Cadet Suess was asked to establish his commissioning date and offered a commission into the USAF on 22 March 2023."). Plaintiff Suess has now "established his official commissioning date as 7 May 2023." Ex. 5, Decl. of Beth A. Claude ¶ 3. Meanwhile, the Coast Guard has informed the USCGA cadets that they may request reinstatement at the Academy, and that their vaccination status and prior refusal to become vaccinated no longer bar them from reinstatement. *See* Ex. 4, Casavant Email re Readmission ("[T]his email is . . . an invitation to re-apply and a notification that your previous refusal to take the Covid-19 vaccine no longer bars you from serving in the Coast Guard or completing the cadet training program."). As of the date of this filing, three of the USCGA cadet Plaintiffs (Tabitha Aime, Nathaniel Aime, and Jin Johnson) have indicated that they intend to seek readmission. *See* Ex. 2, Decl. of Aaron J. Casavant ¶ 3.

### C.  The Instant Proceedings

On March 7, 2023, the Court issued an order denying Plaintiffs' outstanding motions for a preliminary injunction as moot.  *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2023 WL 2386118 (D.S.C. Mar. 7, 2023).  As to Plaintiffs' first motion, which had been filed in connection with the original complaint, the Court determined that that motion had become moot following the Court's severance order, Plaintiffs' subsequent amendment of the complaint, and the filing of the second motion for a preliminary injunction.  *See id.* at *1 n.1.  And as to that second motion, the Court found that the enactment of the NDAA, coupled with Defendant's rescission of the vaccination requirement, had rendered it moot as well.  *Id.* at *1.  The Court noted that Plaintiffs' post-rescission filings evinced a desire to obtain "restorative preliminary injunctive relief" and "reinstatement to their former positions," but it found such relief "far exceeds any prayer for relief set forth in the Amended Complaint or in the second motion for preliminary injunction."  *Id.* Accordingly, the Court advised Plaintiffs that they would need to move for leave to amend their complaint a second time if they wished to seek such relief.  *See id.*  In a subsequent order, the Court directed Defendant to respond to the amended complaint by April 4, 2023.

On March 24, 2023, Plaintiffs moved for the Court to reconsider its finding that the second motion for a preliminary injunction is moot.  *See* Pls.' Motion for Recon. (MFR), ECF No. 60.[2] Plaintiffs challenge the Court's mootness finding on two grounds.  First, they contend that the Court's order incorrectly assessed the scope of relief sought through the Amended Complaint and second motion for preliminary injunction.  *See id.* at 2–4.  And second, Plaintiffs argue that their

---

[2] Plaintiffs appear to accept the Court's conclusion that their first motion for preliminary injunction became moot over the course of the early proceedings in this case.

motion for preliminary injunction cannot be moot "until each Cadet is restored to their previous position." *Id.* at 6.

Defendant now files this opposition to Plaintiffs' motion for reconsideration and moves to dismiss this case as moot.

## LEGAL STANDARDS

"Motions to reconsider interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure." *United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings*, No. 9:14-cv-3699, 2022 WL 688988, at *1 (D.S.C. Feb. 23, 2022) (Gergel, J.).[3]  Under that Rule, "a district court retains the power to reconsider and modify its interlocutory judgments at any time prior to final judgment . . . ." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256 (4th Cir. 2018); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Nevertheless, reconsideration is an "extraordinary remedy," *United States ex rel. Lutz*, 2022 WL 688988, at *1, and the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case," *U.S. Tobacco*, 899 F.3d at 257.  "Accordingly, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially

---

[3] In their motion for reconsideration, Plaintiffs incorrectly identify Federal Rules of Civil Procedure 59(e) and 60 as governing the Court's review.  *See* Pls.' MFR at 2.  In fact, those Rules "address different circumstances." *Quillin v. Simon*, No. 3:20-cv-3063-CMC-SVH, 2021 WL 1589274, at *2 n.2 (D.S.C. Apr. 22, 2021).  But because the standards under Rule 54(b) are similarly stringent, little turns on Plaintiffs' mistake.  *See Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 629 n.2 (D. Md. 2015).

different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'"

*Id*. But "a party's mere disagreement with the district court's ruling does not warrant a motion for

reconsideration," and "courts do not entertain motions to reconsider which ask the Court to rethink

what the Court ha[s] already thought through—rightly or wrongly." *Haas v. City of Richmond*,

No. 3:17-cv-260, 2018 WL 9865742, at *2 (E.D. Va. Aug. 27, 2018) (cleaned up).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the

court has jurisdiction over the subject matter of the dispute." *Lawrence-Whittaker v. Colonial

Pipeline Co.*, No. 21-cv-2526, 2022 WL 2905467, at *2 (D. Md. July 22, 2022). "Generally, when

a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district

court may regard the pleadings as mere evidence on the issue and may consider evidence outside

the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't

of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). And "[t]he burden of showing subject matter

jurisdiction on a Rule 12(b)(1) motion rests with the plaintiff." *Alexander v. Barnwell Cnty. Hosp.*,

498 B.R. 550, 557 (D.S.C. 2013) (Childs, J.). "Because mootness 'constitutes a part of the

constitutional limits of federal court jurisdiction,' questions of mootness are properly considered

pursuant to [Rule] 12(b)(1)." *Beahn v. Gayles*, 550 F. Supp. 3d 259, 270–71 (D. Md. 2021)

(quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)).

## ARGUMENT

### I.    The Court should not reconsider its mootness finding.

The Court was correct to conclude that, following the passage of the NDAA and the

issuance of Defendant's rescission order, Plaintiffs' motion for a preliminary injunction is moot,

and that the "restorative" relief Plaintiffs now seek falls outside the scope of their pleadings. Even

if those findings were debatable, Plaintiffs' arguments to the contrary would not establish that the

Court committed any clear error, much less one causing manifest injustice—a showing Plaintiffs

must make to warrant reconsideration.  Because Plaintiffs' "mere disagreement" with the Court's findings does not meet the high standard set by Rule 54(b), *Haas*, 2018 WL 9865742, at *2, the Court should deny their motion for reconsideration.

**A.  The Court properly assessed the scope of relief sought by Plaintiffs.**

Plaintiffs first contend, *see* Pls.' MFR at 2–4, that the Court misconstrued the record when it found that their post-rescission requests for "restorative preliminary injunctive relief," concerning the USCGA cadets and Plaintiff Suess, "far exceed" the scope of the amended complaint and Plaintiffs' motion for preliminary injunction.  *Clements*, 2023 WL 2386118, at *1.  But it is Plaintiffs who misread the record.  In each of their complaints, Plaintiffs repeatedly and prominently identified their requested relief as being, most centrally, an injunction against *enforcement* of the COVID-19 vaccination requirement.  *See, e.g.*, Compl. at 29 (requesting that the Court "[e]njoin any implementation of the DoD/Coast Guard Mandate . . . or stay the effective date for any implementation orders"); Am. Compl. at 21 (requesting that the Court "[e]njoin any implementation of the DoD and Coast Guard Mandates"); *cf. Colonel Financial Management Officer v. Austin* (*Colonel FMO*), No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023) ("In each iteration of the complaint, in the prayer for relief in each complaint, and during hearings throughout this action, the plaintiffs have repeatedly phrased their request for relief as a preliminary injunction against application of the COVID-19 vaccine mandate to religiously objecting service members . . . .").  Their motion for preliminary injunction was expressly cabined to seeking an order that would prevent enforcement of the vaccination requirement.  *See* Pls.' Second Mot. for TRO & PI, ECF No. 34, at 23 ("The injunctive relief does not seek to undo any actions already undertaken by the parties, but rather stops the implementation of the orders . . . .").  And confirming that their focus was on halting enforcement, Plaintiffs' proposed order for preliminary injunctive relief would only have prohibited further enforcement;

it made no reference to the sort of "restorative" relief Plaintiffs now contend was central to their motion. *See, e.g.*, Proposed Order, ECF No. 34-1 (requesting only that Defendant be "preliminarily enjoined from enforcing [the] mandates requiring involuntary inoculation with a COVID-19 vaccine"); *see also* Proposed Order, ECF No. 35-1 (requesting an order that the Coast Guard "shall refrain from taking any further adverse action").  Even after the USCGA cadets were eventually separated from the Coast Guard, Plaintiffs never submitted any updated proposed order to restore those Plaintiffs to their prior positions—despite filing several "supplements" of questionable relevance to their claims. *See, e.g.*, Pls.' Third Suppl., ECF No. 50 (discussing agreements reached by the parties in separate litigation against the Coast Guard).  Given this record, the Court reasonably concluded that "restorative" relief was not at issue in this case, and that in order to press any claims to such relief, Plaintiffs would "need to move to amend their complaint and clearly set forth any new claims and the relief they seek to assert." *Clements*, 2023 WL 2386118, at *1.

Plaintiffs offer little to rebut the Court's conclusion.  Indeed, Plaintiffs' case for reconsideration turns entirely on two sentences of argument, buried in a footnote (number 33 out of 34) on the last full page of their opening brief. *See* Pls.' MFR at 3–4 (quoting Pls.' Second Mot. for TRO & PI, ECF No. 34, at 23 n.33).  That footnote asserted that the Court has "authority to issue a restorative preliminary injunction." *Id.*  But Plaintiffs' cursory treatment of the question— waiving away potentially serious concerns about the extent of that authority as to military personnel matters with unadorned citations to a 30-year old district court case from California and a 25-year old decision by the Court of Federal Claims—was insufficient to expand the otherwise limited request for relief at issue in this case, especially given that Plaintiffs simultaneously disclaimed any need to "undo" any actions by Defendant. *See* Pls.' Second Mot. for TRO & PI, ECF No. 34, at 23; *cf. Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("A

fleeting statement in the parenthetical of a citation is no more sufficient to raise a claim than a cursory remark in a footnote, which we have consistently rejected.").  If there could be any doubt on this point, it would be put to rest by Plaintiffs' failure to press for a "restorative preliminary injunction" in their reply brief. *See, e.g.*, Pls.' Second PI Reply, ECF No. 45, at 20–21 (discussing the discharge of the USCGA cadets at length but again requesting only that Defendant be prohibited "from enforcing . . . unlawful orders and taking any adverse action against Plaintiffs for failing to obtain the vaccine").

**B.  The Court correctly found that the NDAA and rescission order mooted Plaintiffs' preliminary injunction motion.**

For related reasons, the Court also correctly determined that Plaintiffs' second motion for preliminary injunction is now moot.  Plaintiffs' request for preliminary injunctive relief was clearly targeted at the now-defunct COVID-19 vaccination requirement established by Defendant in August 2021.  While that policy was in effect, the Court could have considered (subject to all defenses) whether to prohibit Defendant (and through him, his subordinates) from separating Plaintiffs on the basis of their vaccination status and to maintain the  status quo for Plaintiffs  as of the filing of their operative motion for preliminary injunction. *Cf. Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017).  But with the enactment of the NDAA and Defendant's rescission of the military's COVID-19 vaccination requirement, Plaintiffs are no longer subject to any such requirement.  Accordingly, any claims for relief from that requirement are moot.

Numerous courts agree that, following Defendant's rescission order, requests for injunctive relief against the military's former COVID-19 vaccination policy are moot.  In *Roth v. Austin*, the Eighth Circuit found that because "[n]one of the [plaintiffs] is subject to a COVID-19 vaccination requirement, and no adverse action may be taken against [them] for refusing to receive the COVID-19 vaccine," the plaintiffs had received "all of their requested preliminary

injunctive relief." --- F. 4th ----, 2023 WL 2531885 (8th Cir. Mar. 16, 2023); *see also id.* at *4 (Stras, J., concurring) (stating that "the plaintiff-airmen do not need relief from a mandate that no longer exists"). Similarly, the D.C. Circuit, on its own motion and "[i]n light of" Defendant's rescission order and "the subsequent directives formally implementing" the rescission, dismissed appeals from the denial of a preliminary injunction as moot. *Navy Seal 1 v. Austin*, 2023 WL 2482927, at *1 (D.C. Cir. Mar. 10, 2023). And two panels of the Ninth Circuit in *Short v. Berger*, Nos. 22-15755, 22-16607 (9th Cir. Feb. 24, 2023), and *Dunn v. Austin*, No. 22-15286 (9th Cir. Feb. 27, 2023), dismissed similar appeals as well. District courts too have found challenges to the COVID-19 vaccination requirement are moot. *See, e.g.*, *Colonel FMO*, 2023 WL 2764767, at *3 (noting that "[t]he challenged and preliminarily enjoined mandate no longer exists," and indicating intent upon remand to "grant the defendants' motions to dissolve the preliminary injunctions, to de-certify the class of Marines, and to dismiss the complaints as moot"). In other cases, the plaintiffs have voluntarily dismissed their claims. *See, e.g.*, Ex. 17, Response to Order to Show Cause, *Oklahoma v. Biden*, ECF No. 75 (W.D. Okla. Feb. 3, 2023).

Plaintiffs here resist this consensus, arguing that their motion for preliminary injunctive relief cannot be moot until the military has unconditionally reinstated every Plaintiff that was separated as a result of their refusal to comply with the rescinded order to become vaccinated against COVID-19. *See* Pls.' MFR at 5–6. But awarding restorative relief now, based on the alleged illegality of a rescinded policy, would "ha[ve] things backwards." *Holloway v. City of Virginia Beach*, 42 F.4th 266, 275 (4th Cir. 2022) (following legislative change, injunctive relief must be based on review of current policy). At this stage in the litigation, Plaintiffs' claims for reinstatement are, at best, the sort of residual claims that courts have found beyond the scope of a general request for injunctive relief. *See id.* at 274 (explaining that a "residual claim" against

newly enacted legislative regime "d[oes] not save [a plaintiff's] original challenge from mootness").

Plaintiffs also suggest in passing that, because Defendant maintains that the rescinded vaccination requirement was lawful and retains the authority to re-establish a similar requirement in the future, their claims for injunctive relief cannot be moot. *See* Pls. MFR at 5 (citing *Pashby v. Delia*, 709 F.3d 307, 316–17 (4th Cir. 2013)). But the government's "mere ability to reimpose challenged restrictions is not enough to show a reasonable chance of recurrence" that defeats mootness. *Eden, LLC v. Just.*, 36 F.4th 166, 172 (4th Cir. 2022). Rather, the proper analysis turns on a "factual inquiry into the actual likelihood of recurrence of the offending behavior." *Id.* (quotation omitted); *see also Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 164 n.6 (4th Cir. 2021) (clarifying that, in *Pashby*, the key fact defeating mootness was that "the government[ terminated] the offending behavior . . . in response to a lawsuit"). And based on the record in this case—which reflects that Defendant has vigorously defended the prior vaccination policy yet, following congressional action, led a steady effort to rescind the policy and, where appropriate, reverse adverse actions taken based on it—recurrence cannot be found to be likely. *See Colonel FMO*, 2023 WL 2764767, at *2 ("Because in this action Congress has unambiguously renounced the mandate and has directed by statute a rescission of the mandate, recurrence of the military's challenged conduct seems, absent any compelling evidence to the contrary, remote and implausible."); *id.* ("The rescission is unambiguous, results from Congress's constitutional authority and not from an attempt by the Secretary of Defense to manipulate jurisdiction, has resulted in consistent application, and has rendered superfluous the plaintiffs' request for [relief]." (quotations omitted)).

15

**C.  Plaintiffs will not suffer manifest injustice absent reconsideration.**

The record provides substantial support for this Court's finding that "restorative" relief was not encompassed within Plaintiffs' amended complaint or motion for a preliminary injunction, and that the motion for preliminary injunction was moot.  *Cf. Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 106 (4th Cir. 1995) (clear error may be found where factual determinations "are not supported by substantial evidence").  But even assuming reasonable minds might differ, Plaintiffs have failed to show that they will suffer "manifest injustice" absent reconsideration.

"Manifest injustice occurs where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *South Carolina v. United States*, 232 F. Supp. 3d 785, 799 (D.S.C. 2017).  And a "patent misunderstanding or misapprehension of the facts or arguments, so as to warrant a finding of manifest injustice, occurs only where such error was indisputably obvious and apparent from the face of the record." *Id.*

No such conclusion is possible here.  Plaintiffs' own proposed orders would not have awarded them "restorative" relief, and so there is no basis to conclude that the Court misunderstood Plaintiffs' pleadings.  And given that numerous courts have now found similar requests for injunctive relief to be moot, any error in the Court's mootness analysis (there was none) cannot be characterized as "indisputably obvious."  Having failed to establish any manifest injustice, Plaintiffs are not entitled to reconsideration.  Accordingly, the Court should deny Plaintiffs' motion.

**II.    The Court should dismiss this case as moot.**

Far from reconsidering its order denying the motion for a preliminary injunction, the Court should now make explicit what that order already implies—that this case is moot—and dismiss for lack of subject-matter jurisdiction.

**A. Plaintiffs' claims against the now-rescinded COVID-19 vaccination requirement are moot.**

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). And of particular relevance here, "statutory changes that discontinue a challenged practice" will "ordinarily" cause a plaintiff to lose their personal interest in litigation concerning the discontinued practice. *Holloway*, 42 F.4th at 273. "To be sure, not every tweak . . . will have this effect," and "minor and insignificant changes that do not address the essence of a plaintiff's claims will not forestall legal challenges." *Id.* But where an amendment "supersed[es] the challenged [practice] and replac[es] it with one that is significantly different," the plaintiff's claims against it become moot. *Id.* at 274. If a court determines that a statutory change has provided "the precise relief that [the plaintiffs] requested in the prayer for relief in their complaint," its jurisdiction cannot be sustained by residual claims against the new statutory scheme or a belated request for alternative remedies. *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quotation omitted).

Here, even assuming each of the Plaintiffs had an interest in this case sufficient to invoke Article III jurisdiction prior to the rescission, that interest is missing now. Congress directed Defendant to rescind the military-wide vaccination requirement. *See* 136 Stat. at 2571–72. Defendant has now done so; the requirement is no longer being enforced. Further, the military services are working to reverse adverse actions, where appropriate. *See* Ex. 2, Decl. of Aaron J. Casavant ¶ 2; Ex. 5, Decl. of Beth A. Claude ¶ 3; Ex. 12, Sec'y of the Army Memo (Feb. 24, 2023) ¶ 3b; Ex. 9, HQDA EXORD 174-23 (Mar. 7, 2023) ¶¶ 3.C.1.C. And as recent guidance from the

17

Deputy Secretary of Defense emphasizes, any future vaccination policies will be channeled through a new process for Department of Defense approval. *See* Ex. 16, Dep. Sec'y of Def. Mem. (Feb. 24, 2023). All of this shows that Congress "has done the work that Plaintiffs wanted [this Court] to do." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021). Now that Plaintiffs are no longer subject to any ongoing enforcement of the vaccination requirement, they lack a "legally cognizable interest in the outcome" of their claims for injunctive relief. *Holloway*, 42 F.4th at 273.

Far from identifying any continuing need for prospective injunctive relief from a COVID-19 vaccination requirement, Plaintiffs have now recast their claims as seeking "restorative" relief—reinstatement to previous positions, an award of an officer commission, backpay, retroactive promotions, and the like. *See, e.g.*, Pls.' Recon. Motion at 6. But as this Court has already found, remedies of that sort are beyond the scope of Plaintiffs' pleadings, which do not concern remediation of completed wrongs but rather sought to bar Defendant from further implementing the vaccination requirement. *See Clements*, 2023 WL 2386118, at *1; *see also* Am. Compl. at 21 (asking court to "[d]eclare the DoD and Coast Guard Mandates void" and "[e]njoin any implementation" of them).

Plaintiffs contend that they previously raised the prospect of such relief with the Court, *see* Pls.' Recon Mot. at 4, but their filings demonstrate just the opposite; Plaintiffs' motion for a preliminary injunction disclaimed such relief, and their own proposed order would not have awarded them it. *See* Pls.' Second Mot. for TRO & PI, ECF No. 34, at 23 ("The injunctive relief [sought] does not seek to undo any actions already undertaken by the parties, but rather stops the implementation of the orders to prevent further violations of federal law and service regulations."); Proposed Order, ECF No. 34-1 (proposing court order stating only "Defendants are hereby preliminarily enjoined from enforcing their mandates requiring involuntary inoculation with a

COVID-19 vaccine").  To the extent Plaintiffs intended to supplement their prayer for relief by including new arguments in their briefings and other filings, those efforts to evade the requirements for amendment were improper.  *Cf. Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 925 (5th Cir. 2022) (noting that claims for relief raised in briefing are not properly before the court).  And now that this case has become moot, it is too late for Plaintiffs to amend.  *See Saxon Fibers, LLC. v. Wood*, 118 F. App'x 750, 752 (4th Cir. 2005) ("[A] court without subject matter jurisdiction lacks authority to grant a party's amendment motion."); *see also id.* at 752 n.1 (28 U.S.C. § 1653 "allows only the correction of incorrect statements in pleadings 'about jurisdiction that actually exists'" and "does not allow an amendment 'to produce jurisdiction where none actually existed before.'" (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989)).

Even accepting Plaintiffs' improper recharacterization of their claims for relief, yet other hurdles would prevent Plaintiffs' quest for retrospective relief from sustaining this suit.  In particular, to the extent Plaintiffs are dissatisfied that the USCGA cadets have not been "guaranteed" reinstatement, that grievance is not cognizable given Plaintiffs' failure to exhaust available administrative remedies.  *See Williams v. Wilson*, 762 F.2d 357, 359–60 (4th Cir. 1985) (holding that, under *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971), courts "should not  review internal military affairs" absent "exhaustion of available intraservice corrective measures").  That conclusion is reinforced by the fact that, when ordering the military's COVID-19 vaccination requirements to be rescinded, Congress noted the existence of administrative "mechanisms to correct a servicemember's military record."  168 Cong. Rec. at H9441.  And as confirmed by Plaintiffs' own filings and the declarations submitted in support of Defendant's motion to dismiss, the Air Force and Coast Guard are already engaging with Plaintiffs in good faith to determine whether, and under what conditions, it might be appropriate for the relevant Plaintiffs

to be reinstated. Plaintiffs cannot simply "assume . . . futility" in order to evade these intraservice remedies. *Alvarado v. Austin*, No. 1:22-cv-876-AJT-JFA, 2022 WL 18587373, at *6 (E.D. Va. Nov. 23, 2022). Moreover, because it is still "entirely speculative and uncertain" "[h]ow and if the military will redress and/or accommodate [the USCGA cadets] in the aftermath of [the NDAA] and the Rescission Memo," the claims that Plaintiffs purport to assert about their reinstatement would not be ripe. *Alvarado v. Austin*, No. 1:22-cv-876-AJT-JFA, 2023 WL 2089246, at *3 (E.D. Va. Feb. 17, 2023) (denying reconsideration).[4] In short, given the availability of nonjudicial means for making Plaintiffs whole, their desire for retrospective relief offers no basis to extend the Court's jurisdiction over this now-moot case.

**B. At the very least, the Court should dismiss all Plaintiffs who do not seek reinstatement.**

Even if the Court disagrees with all of the arguments above, it should, at minimum, dismiss the eighteen service members that Plaintiffs all but concede lack any live claims.[5] As explained *supra* at 10, Plaintiffs' motion for reconsideration focuses entirely on six Plaintiffs: the five USCGA cadets and one USAFA cadet. *See, e.g.*, Pls.' Recon. Mot. 1–2; 5–6.[6] Plaintiffs argue that these Plaintiffs—and only these Plaintiffs—each "retains a live, non-moot injury in fact" because

---

[4] Even assuming some Plaintiff might be denied reinstatement, the record is clear that such a denial would not be based on that Plaintiff's vaccination status. *See, e.g.*, Ex. 2, Decl. of Aaron J. Casavant ¶ 2 ("[T]he Covid-19 vaccination status of any of the plaintiffs in this case who seek readmission to CGA will not be considered in the admissions decision."); Ex. 3, Casavant Script at 2 (noting that "staff will make arrangements for a medical evaluation at the CGA Clinic to ensure [applicants] still meet accession standards")

[5] Those Plaintiffs are Derek Clements, Cade Kloster, Zach Pokrant, James Vasiliu, Judson Babcock, Andy Baumann, Lance Carey, Jennifer Hall, Conner Wilburn, Josiah Beggs, Amelia Cass, Jake Ford, Ezra Paul, Caleb Pym, Rachel Shaffer, Aaron Staiger, Roman Penney, and Andrew Wojtkow. *See* Am. Compl. ¶¶ 1–17, 23–29.

[6] Plaintiffs' motion for reconsideration refers to "S. Gonzalez," *see* Pls.' Recon. Mot. 1, 5. Defendants understand the motion as meaning to refer to Plaintiff Sophia Galdamez.

they have not yet been officially reinstated or commissioned, respectively. *See id.* 5–6; *see also* Pls.' Fourth Suppl. Filing in Support of Pls.' Mot. for a Prelim. Inj. 4 (asserting only that "these six named Plaintiffs are at risk of not receiving full and adequate relief"). Setting aside that all of those Plaintiffs have now been invited to seek reinstatement or have accepted a new commission, *see* Ex. 2, Decl. of Aaron J. Casavant ¶ 2; Ex. 5, Decl. of Beth A. Claude ¶ 3, Plaintiffs' filings raise no argument as to the remaining eighteen Plaintiffs. Because none of those Plaintiffs were separated from their respective academy, discharged from their respective service, or otherwise disciplined for failure to comply with a lawful order to vaccinate, their claims cannot survive the rescission of the COVID-19 vaccination requirement.

## CONCLUSION

The Court should deny Plaintiffs' motion for reconsideration and dismiss this case as moot.

Dated: April 4, 2023

ADAIR F. BOROUGHS
United States Attorney

*/s/ Beth Drake*
Beth Drake (#5598)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC  29201
Phone:  (803) 929-3061
Email:  Beth.Drake@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ Cody T. Knapp*
CODY T. KNAPP (NY #5715438)
CASSANDRA SNYDER (DC #1671667)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 532-5663
Email: cody.t.knapp@usdoj.gov

*Attorneys for Defendant*