IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Charleston Division

| | |
|---|---|
| DEREK CLEMENTS, *et al.*, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 2:22-cv-02069-RMG |
| ) | |
| LLOYD J. AUSTIN, III, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiffs, by and through counsel, submit this combined Opposition to Defendant's Motion to Dismiss and Reply in Support of Plaintiff's Motion for Reconsideration.[1] Plaintiffs ask that the Court deny Defendant's Motion to Dismiss and additionally reiterate their request that the Court reconsider its March 7, 2023, Order dismissing Plaintiffs' Second Motion for a Preliminary Injunction for mootness. Although the mandate is rescinded, the damaging effects of the mandate remain. Plaintiffs' career advancements were impeded and remain constrained; and certain Plaintiffs still have not received reinstatement, backpay, or other appropriate corresponding relief. In addition, the threat of a resurgent COVID-19 vaccine mandate remains. Because there remains outstanding harm which this Court may address and a live threat of injury, this case retains its proper character and jurisdiction before the Court.

---

[1] On April 4, 2023, Defendant filed a combined Motion to Dismiss and Opposition to Plaintiffs' Motion for Reconsideration. Doc 62; Doc 63. Because Defendant combined its arguments regarding dismissal and reconsideration, Plaintiffs similarly combine their Opposition to Defendant's Motion to Dismiss and Reply in Support of Reconsideration.

## **ARGUMENT**

Plaintiffs filed their Motion for Reconsideration to advise the Court of errors in the Court's March 7, 2023, Order, including in the recounting of the contents of Plaintiffs' First Amended Complaint and Plaintiffs' Second Motion for a Preliminary Injunction, and whether events had superseded the basis of the preliminary injunction request and rendered it moot. Similarly, Defendant argues for dismissal on the premise that the case is now moot—thereby suggesting that Plaintiffs are prevented from asking for any non-injunctive relief unless an amended complaint is filed—and alleges that this Court no longer possesses neither subject matter jurisdiction nor a live issue. [2]

First, for a subset of Plaintiffs, both denial of Reconsideration and dismissal for mootness would be improper. As presented in Plaintiffs' Reconsideration Motion, Defendant has not yet confirmed that reinstatement is guaranteed for six Plaintiffs—N. Aime, T. Aime, S. Galdamez, D. Johnson, J. Johnson, and N. Suess. Each has yet to be restored to their previous cadet status pursuant to Defendant's COVID-19 vaccine mandate recission order. Accordingly, each retains a live injury-in-fact redressable by the Court, so long as they remain in discharged status. Moreover, as these Plaintiffs were actually removed and/or prevented from remaining in the Armed Services, each is entitled to corresponding backpay and retroactive restoration to the rank they would have achieved absent the mandate's implementation.

---

[2] The proverbial "elephant in the room" is that while Defendant maintains that the COVID-19 was legal at its inception, Defendant clearly wishes to avoid further scrutiny of its EUA vaccine program. Although confronting DoD and FDA's blatant attempt to characterize EUA products as licensed products may be uncomfortable, there is a clear ancillary benefit to this case proceeding; namely, to prevent the DoD from taking the same action in the future.

In addition, the Plaintiffs that were not removed prior to the COVID-19 vaccine's recission retain a live threat of injury up until Defendant is no longer able to reinstate its challenged EUA vaccination compliance policy. For these reasons, the case is not moot with regard to each Plaintiff, and dismissal is not warranted.

## OPPOSITION TO MOTION TO DISMISS

Plaintiffs urge that dismissal of this case would be improper, as Plaintiffs retain live claims which were clearly incorporated into Plaintiffs' claims starting with this case's inception. Doc 1 [Complaint]; Doc 33 [Amended Complaint]. Dismissal on the grounds of mootness would be inapposite to the facts and law presented to this Court.

### I. Plaintiffs Properly, Sufficiently, and Consistently Pleaded For Certain Restorative Relief

First, Plaintiffs properly ask for restorative relief without filing an amended complaint. Plaintiffs initially requested that the Court "(4) Award any further relief this Honorable Court deems necessary or appropriate in order to accord full and complete relief." Doc. 1 [Complaint]; Doc. 33 [Amended Complaint]. Specifically, cases challenging wrongful military decisions inherently involve certain kinds of restorative relief tied to the primary request of injunctive relief. *See, e.g., Palmer v. United States*, 168 F.3d 1310, 1313–14 (Fed. Cir. 1999) (Full-time service members are "entitled" to retroactive "pay and allowances attributable to their rank and station […] if wrongfully denied.").[3] Backpay, restoration to certain positions and ranks, and

---

[3] Defendant casts doubt on the general premise of both preliminary injunctions and restorative relief within a military context, labeling Plaintiffs' treatment of the issues as "cursory" and suggesting that the U.S. Court of Federal Claims is an unpersuasive authority with regards to restorative action and preliminary injunctive relief against the military.

First, as cited to in Plaintiffs' Second Preliminary Injunction Motion, preliminary injunctions on behalf of military personnel against the military have long been established, including in the Fourth Circuit. *See Yahr v. Resor*, 431 F.2d 690, 690 (4th Cir. 1970); Doc. 34 at 20, n. 32. The

3

record corrections are long-established in caselaw as appropriate remedies in military injunction cases. *Id.*

This case is no different – Plaintiffs sought to reverse the wrongful decision, to halt any further adverse actions, and to then to place themselves in a position as if the wrongful COVID-19 vaccine mandate had never been issued. While the mandate has been halted for now, there has been no reversal of the decision to order mandate compliance from Fall 2021 until its recission, nor has each Plaintiff been restored. Accordingly, now that DoD eliminated the vaccine mandate, Plaintiffs' Complaints clearly contemplate accommodating and remedying any already-removed service members. Defendant should be made to pay backpay for any discharged service member and/or cadet for the time that they were removed from the service. Defendant should either backdate each Cadet's commission date so that they technically retain the same seniority as their non-separated peers or should provide Cadets with an accelerated class schedule so that they can

---

infrequency of this occurrence in no way undermines the propriety of a court's ability to intervene. *See, e.g., Roe v. Dep't of Defense*, 947 F.3d 207, 218-220 (4th Cir. 2020); *Bluth v. Laird*, 435 F.2d 1065, 1071 (4th Cir. 1970) (This Circuit has never had reservations about "directing the military to comply with its own regulations where it has been shown that a regulation was not followed, and there has been a prima facie showing that a member of the military has been prejudiced thereby," to include cases of medical compliance); *United States ex rel. Brooks v. Clifford*, 409 F.2d 700 (4th Cir. 1969); *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1969)). "[I]n exercising its discretion, the military will be held to the positive commands it has imposed on itself as to what procedures and steps are to be followed in exercising its discretion." *Id.* (emphasis added).

Second, both the U.S. Court of Federal Claims and the U.S. Court of Appeals for the Federal Circuit routinely deal with military cases in which the military clearly failed to follow regulations and or statutes and where the court felt it appropriate to award promotions, backpay, or a correction of records as a result. Accordingly, both are particularly persuasive authorities on the topic of this Court's ability to order restorative and injunctive relief against the military when it clearly fails to follow the law.

catch up to their peers. Defendant should also be compelled to remove any persisting adverse or disciplinary records.

## II. All Plaintiffs Retain Live Issues Redressable Before the Court, Which Precludes Dismissal of the Case on Grounds of Mootness.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Dismissal for mootness must meet the heavy burden of showing that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). Notably, the Fourth Circuit has found that this burden is not met if a defendant retains the authority to reinstate a challenged policy. *Pashby v. Delia*, 709 F.3d 307, 316-17 (4th Cir. 2013).

First, the persisting threat of reinstatement of a challenged policy is enough to prevent a Court from dismissing a case for mootness. The recent NDAA does not prohibit future COVID-19 mandates, it merely rescinds the COVID-19 mandate that was implemented in Fall 2021. The fact remains that Defendant continues to insist that the order requiring submission of service members to COVID-19 vaccination was legal at the time of its issuance. All Plaintiffs are at risk of being affected by a resurgent COVID-19 vaccination mandate, as Defendant has carefully positioned itself so that it can order future compliance. It is therefore not "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Pashby*, 709 F.3d at 316-17.

Moreover, Defendant has only indicated its "intent" to reinstate individuals separated for COVID-19 vaccine refusal. Doc. 57; Doc 62 at Exhibit 4. Meanwhile, Defendant and its component agencies have insisted that they are making no guarantees as to reinstatement,

backpay, or other remedies. As noted, six Plaintiffs—N. Aime, T. Aime, S. Galdamez, D. Johnson, J. Johnson, and N. Suess—have not yet been restored pursuant to Defendant's COVID-19 vaccine mandate recission order.[4] USCGA only maintains there is a *possibility* to reinstate or commission the respective cadets; however, neither it nor Defendant has guaranteed any such action. To the contrary, the USCGA has: (1) repeatedly reminded Plaintiffs that readmission is "not a guarantee," (2) indicated that reinstatement shall be determined by the Coast Guard Academy Readmission Panel, which retains full discretion to deny readmission, and (3) informed Plaintiff cadets that any reinstatement will need to be preceded by a fully completed application, which each USCGA Cadet Plaintiff will need to submit to the USCGA, and in which Plaintiffs must specifically address how their previous missteps (i.e., their refusal to submit to vaccination with an unlicensed vaccine) will not reoccur.

      Critically, Defendant maintains that the separations were proper, on the basis that the order to be vaccinated was lawful at the time it was issued. Defendant thus maintains that any reinstatement or any other forms of relief are not guaranteed and suggests that any reinstatement action is a form of grace, to be determined on an individual basis. This is incorrect – removal based on resisting an unlawful order entitles the affected service member to reinstatement. This is not a matter of grace; this is a legal entitlement necessary to correct an unjust and wrongful governmental action. More importantly, up until each Cadet is restored to their previous position and receives what they are entitled to under the full extent of this Court's judicial authority, each

---

[4] As noted in Defendant's motion, Cadet Suess has not yet been commissioned, given that his official commissioning is set for 7 May 2023 and has not yet occurred. It is thus premature to assert that full remedy has been accounted for. Moreover, Cadet Suess's commission should be retroactively backdated, to account for the commission date of his peers which occurred nearly a year ago.

6

Cadet retains a live, non-moot injury in fact as a result of refusing to comply with an unlawful order.

Moreover, for the other Plaintiffs, the threat of removal still hangs over them. While these servicemembers may not require a preliminary injunction to restore them to their rightful place in the service of their country, they are entitled to remain in this case up until Defendant can no longer compel their submission to an EUA COVID-19 vaccination. In short, each active-duty Plaintiff possesses a live threat of injury because Defendant has carefully orchestrated its ability to reissue a COVID-19 vaccine mandate, thereby "retain[ing] the authority to reinstate a challenged policy." *Pashby*, *supra*.[5]

Accordingly, because there is no promise that the USCGA Plaintiffs will receive redress and because Defendant remains able to reinstate its challenged policy, each named Plaintiff retains a live issue, and dismissal at this stage is unwarranted.

---

[5] Defendant suggests the premise that the threat of a renewed vaccine mandate is unlikely, citing *Colonel FMO*, 2023 WL 2764767, at *2 ("Because in this action Congress has unambiguously renounced the mandate and has directed by statute a rescission of the mandate, recurrence of the military's challenged conduct seems, absent any compelling evidence to the contrary, remote and implausible."). But this other court overlooks critical facts – the NDAA recission, by design, did not address future COVID-19 mandates. Accordingly, the recission of one mandate is not dispositive of a mandate renewal. In addition, the mandate was itself unpopular amongst a sizable contingent in Congress at its inception. In short, DoD has a proven track record of not adhering to Congressional sentiment when it comes to implementing vaccine programs. This track record, when coupled with DoD's positioning, makes a renewed COVID-19 vaccine policy a very realistic possibility.

## SUPPORT FOR RECONSIDERATION

Turning to the issue of reconsideration, Plaintiffs stand by their Motion for Reconsideration, as (1) reconsideration and restorative relief were clearly contemplated in the Preliminary Injunction Motion at question, and (2) reconsideration is warranted by the circumstances.

Defendant's motion overlooks critical context concerning Plaintiffs' Second Preliminary Injunction Motion.[6] Defendant suggests that Plaintiffs argued for injunctive relief at the exclusion of asking for remedial action. The section under discussion reads as follows:

> All Plaintiffs ask for in this motion is to return the relationships between Defendants and Plaintiffs to the status quo ante, before the implementation of the unlawful vaccine mandate and subsequent implementation orders. *Id.* The injunctive relief does not seek to undo any actions already undertaken by the parties, but rather stops the implementation of the orders to prevent further violations of federal law and service regulations.

Doc. 34 at 23. As of the filing of the Second Preliminary Injunction Motion on August 15, 2022, no Plaintiffs had been discharged yet. But as Defendant's rhetoric against COVID-19 vaccine-refusers consistently ramped up, Plaintiffs recognized that efforts to remove service members who resisted COVID-19 vaccination were forthcoming. Accordingly, Plaintiffs anticipated that

---

[6] Defendant chides Plaintiffs on citing Rules 59 and 60 instead of Rule 54. While Defendant is correct in pointing to the somewhat nebulous nature of reconsideration, courts have clearly ruled that Rule 60 governs reconsideration in concert with other applicable rules, and Rules 60 and 59 on their face are not restricted to final judgments. *See* Fed. R. Civ. P. 60 (a) ("Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."). Plaintiffs maintain that precedent governing Rules 60 and 59(e) in concert with on another remains applicable for the purpose of evaluating reconsideration at any point in a case, based on a plain reading of the rules. Notably, 59(e) which pertains to judgments, is not limited to "final" judgments. *Compare* Fed. R. Civ. P. 59(e) (referring only to "judgment") *and* Fed. R. Civ. P. 60(a) (pertaining to "judgment, order, or other part of the record") *with* Fed. R. Civ. P. 60(b) ("Grounds for Relief from a *Final* Judgment") (emphasis added).

the removal of Plaintiffs was to begin imminently (a prediction which proved accurate, as the Coast Guard Academy Cadet Plaintiffs were removed on September 23, 2022).

Against this backdrop, Plaintiffs' preliminary injunction efforts did not focus on restoration of any events prior to filing on August 15, 2022; instead, the preliminary injunction was aimed at (1) halting any future removals, and (2) reversing a removal, should one occur. Defendant takes issue with this second point, but in doing so simply misses the fact that Plaintiffs were not focused on remedying any August 15 actions, but instead were concerned with halting and reversing any post-August 15 actions.

Plaintiffs motioned the Court for a temporary restraining order and a preliminary injunction, asking the Court to enjoin Defendant from enforcing the unlawful order in anticipation of impending efforts to remove Plaintiffs from their respective service. Plaintiffs also asked, in the alternative, for the Court to issue restorative relief if any Plaintiff were separated prior to resolution of the case. Plaintiffs sought to prevent removal, but also to rescind removal should it occur. Restorative relief was thus contemplated and addressed in both Plaintiffs' First Amended Complaint and in Plaintiffs' Second Motion for Preliminary Injunction.

Plaintiffs therefore respectfully note that the Court's assessment in denying the Preliminary Injunction Motion was in error. Defendant's arguments against reconsideration are similarly unfounded. This Court should reconsider its decision to deny injunction relief and order the reinstatement of the USCGA Cadets ensuring that Defendant goes beyond merely considering their return to the Academy.

## CONCLUSION

The Court should grant Plaintiffs' Motion for Reconsideration, and deny Defendant's Motion to Dismiss, because Plaintiffs possess a live, non-moot potential for injury and because restorative relief has been part of Plaintiffs' formal demands *ab intio*. Accordingly, Plaintiffs request this Court grant their Motion for Reconsideration and their Second Motion for Preliminary Injunction seeking, *inter alia*, restorative action, and deny Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Michael T. Rose*
Michael T. Rose (S.C. Bar No. 0004910)
Mike Rose Law Firm, PC
409 Central Ave.
Summerville, SC 29483
Telephone: (843) 871-1821
mike@mikeroselawfirm.com
*Local Counsel*

*/s/ Carol A. Thompson*
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
cthompson@fedpractice.com
*Admitted by Special Admission*

*/s/ John J. Michels, Jr.*
John J. Michels, Jr.
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
lmichels@fedpractice.com
*Admitted by Special Admission*
*Counsel for Plaintiffs*